**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) JOSEPH BREWER, and<br>(2) JOSHUA CHUCK, and<br>(3) JASON MOODY, and individually and on behalf of all others similarly situated,<br>Plaintiffs,<br>v.<br><br>(1) ALLIANCE COAL, LLC, and<br>(2) THE BOARD OF DIRECTORS OF ALLIANCE RESOURCE MANAGEMENT GP, LLC, and<br>(3) THE ADMINISTRATIVE COMMITTEE OF ALLIANCE RESOURCE MANAGEMENT GP, LLC, and<br>(4) JOHN DOES 1-30,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.: 24-cv-0406-CVE-SH |

**<u>DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT</u>**

Defendants Alliance Coal, LLC ("Alliance Coal"); the Board of Directors of Alliance Resource Management GP, LLC; and the Administrative Committee of Alliance Resource Management GP, LLC ("Committee")[1] (collectively "Defendants") move to dismiss Joseph Brewer, Joshua Chuck, and Jason Moody's ("Plaintiffs") Second Amended Complaint ("SAC") (ECF No. 59) which asserts claims under the Employee Retirement Income Security Act of 1974 ("ERISA"). For the reasons stated in the accompanying Brief in Support, the SAC should be dismissed with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

---

[1] For purposes of this Motion Defendants accept Plaintiffs' allegations as stated. However, Defendants reserve the right to argue that under the terms of the Plan document the Investment Committee, not the Administrative Committee, had responsibility over the decisions challenged in Plaintiffs' SAC. *See* Ex. 1, 2015 Alliance Coal, LLC and Affiliates Profit Sharing and Savings Plan Doc., § 9.2.

**TABLE OF CONTENTS**


I. INTRODUCTION AND SUMMARY OF ARGUMENT. .......... 1

II. FACTUAL BACKGROUND. .......... 2

A. The Plan. .......... 2

B. The Plan's Recordkeeping Fee. .......... 2

C. Relevant Procedural History and the Court's Order Dismissing the FAC. .......... 4

D. The SAC's Recordkeeping Claim. .......... 5

III. LEGAL STANDARDS. .......... 6

IV. PLAINTIFFS' RECORDKEEPING CLAIM FAILS UNDER ERISA. .......... 6

A. Plaintiffs' Recordkeeping Claim Fails Under ERISA's Standards. .......... 7

B. Plaintiffs' Recordkeeping Claim is Implausible Against the Backdrop of the Plan's Recordkeeping Agreements and Participant Disclosures. .......... 9

C. Plaintiffs' Fee Comparators Do Not Satisfy the Meaningful Benchmark Standard. .......... 12

1. The SAC's New Comparator Plans Do Not Satisfy the Meaningful Benchmark Standard. .......... 12

2. The SAC's Fee Comparisons Are Also Flawed Because the New Comparators Were Paid Indirect Recordkeeping Fees. .......... 14

3. Plaintiffs' Allegations Regarding NestEgg's Fees Are Wrong and Do Not State a Claim. .......... 16

4. Using Different Comparators for Every Year of the Class Period Does Not Satisfy the Meaningful Benchmark Standard. .......... 17

D. The SAC Repeats Legally Flawed Arguments Previously Rejected by This Court. .......... 18

1. The SAC Repeats the Flawed Arguments That Recordkeeping Services Are Fungible and That All Recordkeepers Are Capable of Providing the Plan's Recordkeeping Services. .......... 19

2. Intrust's Experience with Large Defined Contribution Plans Still Does Not Infer a Fiduciary Breach. .......... 20

3. Plaintiffs' Conclusory RFP Allegations Are Still Insufficient to Sustain a Claim Under ERISA. .......... 20

V. PLAINTIFFS' DERIVATIVE MONITORING CLAIM SHOULD ALSO BE DISMISSED. .......... 21

VI. CONCLUSION. .......... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....6

*Barrett v. O'Reilly Auto., Inc.*,
112 F.4th 1135 (8th Cir. 2024) .... *passim*

*Berneike v. CitiMortgage, Inc.*,
708 F.3d 1141 (10th Cir. 2013) ....3

*Boyette v. Montefiore Med. Ctr.*,
No. 24-1279, 2025 U.S. App. LEXIS 391 (2d Cir. Jan. 8, 2025).... *passim*

*Cunningham v. Cornell Univ.*,
604 U.S. 693 (2025)....6

*England v. Denso Int'l Am. Inc.*,
136 F.4th 632 (6th Cir. 2025) .... *passim*

*Ferrotec, Inc. v. Cummins, Inc.*,
No. 5-cv-1174-MSK-MEH, 2006 U.S. Dist. LEXIS 113515
(D. Colo. Sept. 1, 2006) ....10

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)....6

*Garnick v. Wake Forest Univ. Baptist Med. Ctr., Bd.*,
629 F. Supp. 3d 352 (M.D.N.C. 2022) ....14

*GFF Corp. v. Associated Wholesale Grocers.*,
130 F.3d 1381 (10th Cir. 1997) ....3, 10

*Hughes v. Northwestern Univ.*,
595 U.S. 170 (2022)....2, 6

*Mateya v. Cook Grp. Inc.*,
No. 1:22-cv-1271-RLY-TAB, 2023 U.S. Dist. LEXIS 124838 (S.D. Ind. June
16, 2023) ....13, 16, 17

*Matney v. Barrick Gold of N. Am.*,
80 F.4th 1136 (10th Cir. 2023) .... *passim*

*Matousek v. MidAmerican Energy Co.*,
51 F.4th 274 (8th Cir. 2022) ....7, 11, 13, 19

*Miller v. Pfizer, Inc.*,
No. 1:23-cv-594, 2024 U.S. Dist. LEXIS 252014 (W.D. Mich. Oct. 17, 2024) ...............17, 18

*Peeler v. Bayada Home Health Care, Inc.*,
No. 1:24-cv-231-MR, 2026 U.S. Dist. LEXIS 14223 (W.D.N.C. Jan. 27, 2016) ..........14

*Singh v. Deloitte LLP*,
123 F.4th 88 (2d Cir. 2024) .......... *passim*

*Smith v. CommonSpirit Health*,
37 F.4th 1160 (6th Cir. 2022) ..........19

**Statutes**

29 U.S.C. § 1113..........16

ERISA .......... *passim*

Fed. R. Civ. P. 12(b)(6)..........6, 7, 21

**Other Authorities**

*Excess Fee and Imprudence Litigation*, Euclid Fiduciary (July 13, 2023),
https://encorefiduciary.com/2023-mid-year-update-on-excess-fee-and-imprudence-litigation/..........6

# I. INTRODUCTION AND SUMMARY OF ARGUMENT.

Under ERISA, context is everything. *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1146 (10th Cir. 2023) (for ERISA breach of fiduciary duty claims, courts must engage in a "careful, context-sensitive scrutiny of a complaint's allegations"). This Court agreed and dismissed Plaintiffs' previous recordkeeping claim on the grounds that unsupported legal arguments and generic conclusory allegations did not provide the context necessary to plausibly state a claim of fiduciary imprudence. *See* ECF No. 58, p. 10-18. However, Plaintiffs' Second Amended Complaint ("SAC") does not correct any of the legal or factual defects the Court identified. Instead, Plaintiffs allege that the Alliance Coal, LLC and Affiliates Profit Sharing and Savings Plan ("Plan") paid excessive recordkeeping fees and completely disregard the Plan's contractual recordkeeping fee and participant disclosures, which were available when drafting the SAC. These documents reveal that the Plan's recordkeeping fee was *less than* the fee that the Plaintiffs argue is reasonable. As a result, the Plan's recordkeeping agreements and participant disclosures are dispositive and warrant dismissal of the SAC.

But even without the recordkeeping agreements or participant disclosures, the SAC is still comprised entirely of the same legally flawed allegations as the First Amended Complaint ("FAC"). The SAC merely compares the Plan's total compensation paid to Intrust with thirty-one putative comparator plans. But **none** of the Plaintiff's comparator plans received the same recordkeeping services as the Plan. Nearly all comparators' fees are understated because they received indirect compensation not documented in the Form 5500s relied upon by Plaintiffs. As such, these comparisons do not satisfy the meaningful benchmark standard and cannot sustain a claim under ERISA's context-specific pleading standards or this Court's prior Order. The SAC's only remaining allegations are recycled arguments rejected in this Court's previous dismissal.

These allegations fall short of ERISA's context-specific pleading standards, and the SAC must be dismissed for failure to state a claim.

## II. FACTUAL BACKGROUND.

### A. The Plan.

Alliance Coal is a global provider of energy solutions. ECF No. 59, ¶ 18.[2] Alliance Coal sponsors the Plan, which is a defined contribution plan under ERISA, to provide retirement benefits to eligible employees. ¶ 18, 40. Under the Plan, participants' benefits are determined based on the assets in their individual accounts, including any income, expenses, gains, or losses. *Matney*, 80 F.4th at 1141. Participants' Plan accounts are funded by contributions from Alliance Coal and participants. ¶ 46. The Plan provides that all administrative fees (including recordkeeping fees) will be paid with Plan assets unless Alliance Coal, in its settlor capacity, decides to pay such expenses. Ex. 2, 2023 Alliance Coal, LLC and Affiliates Profit Sharing and Savings Plan Document ("Plan Doc."), § 7.4 ("The expenses of administering the Plan, including the fees and expenses of the Trustee, the Committee, and the Investment Managers, shall be paid from the Trust, unless such expenses are paid by the Company.").

### B. The Plan's Recordkeeping Fee.

The Plan, like all large defined contribution plans, contracts with a third-party recordkeeper to manage day-to-day Plan account operations, as well as other administrative tasks, including opening new participant accounts, providing participants with quarterly statements, maintaining a website for participant assistance, processing participant loans, and other necessary participant communications. *Hughes v. Northwestern Univ.*, 595 U.S. 170, 174 (2022); *see also* ¶ 57. Since the beginning of the Class Period the Plan engaged Intrust Bank, N.A. ("Intrust") to provide

---

[2] Hereafter references to the SAC are cited as "¶ ___."

recordkeeping and trustee services to the Plan.[3] Ex. 3, 2013 Intrust Fee Agreement, p. 1[4] (indicating the original contract between Alliance Coal and Intrust was effective July 1, 2005). Alliance Coal negotiated new terms to the Intrust agreement in 2013, 2019, and 2023. *Id.*; Ex. 4, 2019 Intrust Fee Agreement; Ex. 5, 2023 Intrust Fee Agreement. These agreements show the Plan's recordkeeping fees during the Class Period were:

| **Effective Date** | **Recordkeeping Fee** |
|---|---|
| Jan. 1, 2013-Sept. 30, 2019 | $30 per participant for first 3k participants<br>$25 per participant thereafter |
| Oct. 1, 2019-Dec. 31, 2022 | $25 per participant |
| Jan. 1, 2023-present | $20 per participant |

The recordkeeping fees were also disclosed to Plan participants in their yearly ERISA § 404(a) disclosures since 2020. Ex. 6, 2020 Alliance Coal § 404(a), p. 2[5]; Ex. 7, 2021 Alliance Coal § 404(a), p. 2; Ex. 8, 2022 Alliance Coal § 404(a), p. 8; Ex. 9, 2023 Alliance Coal § 404(a), p. 8; Ex. 10, 2024 Alliance Coal § 404(a), p. 8. Crucially, Alliance Coal, acting in its settlor capacity under Section 7.4 of the Plan, has covered participants' recordkeeping fees since 2024. Ex. 9, 2023 Alliance Coal § 404(a), p. 9; Ex. 10, 2024 Alliance Coal § 404(a), p. 9. In other words, since 2024, participants have paid no recordkeeping fees.

[3] Before the Class Period the Plan's recordkeeping fees paid under these agreements were allocated to NestEgg Consulting, Inc. ("NestEgg"), which is an Intrust related entity.

[4] The Court can take judicial notice of the Plan's recordkeeping fee agreements because they were available to Plaintiffs when drafting the SAC and are central to their allegations. ECF No. 28-17 -28-19 (the recordkeeping agreements attached to Defendants' previous Motion to Dismiss); *Matney*, 80 F.4th at 1158 n.19; *GFF Corp. v. Associated Wholesale Grocers.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997); *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013).

[5] The Court can take judicial notice of the Plan's § 404(a) disclosures because they are expressly incorporated into Plaintiffs' SAC. *See* ¶ 84.

**C. Relevant Procedural History and the Court's Order Dismissing the FAC.**

This lawsuit began on September 4, 2024, when Plaintiffs filed an ERISA class action complaint challenging Defendants' administration of the Plan. ECF No. 1. On January 6, 2025, Plaintiffs filed the FAC (ECF No. 27) which alleged the Plan's fiduciaries committed breaches of the fiduciary duties of prudence and loyalty, violated ERISA's anti-inurement provision, and failed to monitor fiduciaries through allocation of the Plan's forfeitures and by permitting the Plan to pay excessive recordkeeping fees. Defendants moved to dismiss these claims for failure to state a claim. ECF No. 28. On December 9, 2025, the Court granted Defendants' motion, dismissed Plaintiffs' forfeiture claims with prejudice, and dismissed Plaintiffs' recordkeeping claims without prejudice, allowing Plaintiffs to file an amended recordkeeping claim. ECF No. 58.

Relevant here, the Court's previous dismissal highlighted multiple legal flaws with the recordkeeping allegations in Plaintiffs' FAC. First, the Court held Plaintiffs' fee comparisons to five comparator plans during the Class Period did not satisfy the meaningful benchmark standard because each comparator plan had different service codes (as compared to the Plan) on their respective Form 5500 filings. ECF No. 58, p. 11-13, 16. The Court rejected Plaintiffs' allegation that comparators' recordkeepers were "capable" of providing the same services and held the meaningful benchmark standard required Plaintiffs to allege that the "comparator plans actually did provide the same quality or even the same type of service as Intrust." *Id.* at 12. The Court also rejected the argument that "all recordkeeping services are fungible and thus all plans inherently offer the same quality and type of service." *Id.* at 13.

The Court then held that Plaintiffs' allegations regarding Intrust's experience with large defined contribution plans did not plausibly allege a claim under ERISA. *Id.* at 16. Finally, the Court held that Plaintiffs' conclusory allegation that the Plan fiduciaries failed to complete requests

for proposal ("RFP") for the Plan's recordkeeper every three to five years was insufficient to infer imprudence. *Id.* at 17-18.

**D. The SAC's Recordkeeping Claim.**

In the SAC, Plaintiffs again allege that Defendants breached their duty of prudence and failed to monitor Plan fiduciaries by permitting the Plan to pay excessive recordkeeping fees. ECF No. 59. Despite publicly available evidence to the contrary, Plaintiffs inexplicably continue to allege the Plan paid between $98 and $220 per participant in recordkeeping fees during the Class Period. ¶ 54. Plaintiffs' alleged fees are calculated by dividing the total compensation paid to Intrust on the Plan's yearly Form 5500s by the total number of participants. *Id.* Plaintiffs allege these fees are excessive compared to the alleged fee paid to NestEgg in 2012 and 2013 (¶ 50) and thirty-one different comparator plans during the Class Period (¶ 103).[6] The SAC shows that each comparator plan has different recordkeeping service codes (indicating they received different services) than the Plan. ¶ 103. Identical to the allegations in the FAC, Plaintiffs justify their comparisons to the new comparator plans by arguing that the Plan's recordkeeping services were "routine" and "typical" and alleging that all large recordkeepers are "capable" of providing the same quality of recordkeeping services. ¶ 73, 89, 107, 110.

Based on the SAC's data, Plaintiffs assert that a reasonable recordkeeping fee for the Plan during the Class Period was $49 per participant. ¶ 107-108. Plaintiffs also reassert their prior allegations that Intrust's lack of experience with large defined contribution plans and Alliance Coal's alleged failure to conduct regular RFPs also imply that Defendants breached their fiduciary duties. ¶ 69-74, 89.

---

[6] The SAC compares the Plan's fees to five different comparator plans for each year of the Class Period. ¶ 103. For the most part, Plaintiffs use unique comparators for each year. *Id.* Plaintiffs do not allege the fees for any of their comparator plans for the entire Class Period. *Id.*

## III. LEGAL STANDARDS.

The Federal Rules of Civil Procedure provide protections against meritless lawsuits. *See* Fed. R. Civ. P. 12(b)(6). Plaintiffs must plead claims that are plausible on their face by alleging ample factual content that permits the court to draw reasonable inferences of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Matney*, 80 F.4th at 1144-45. Courts disregard conclusory statements, which are not entitled to a presumption of truth and evaluate the remaining allegations (if any) to determine whether they infer wrongdoing. *Ashcroft*, 556 U.S. at 679.

When plaintiffs assert claims under ERISA, the Supreme Court instructs courts to conduct "careful, context-sensitive scrutiny" of the underlying allegations. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). This means giving "due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 595 U.S. at 177. The Supreme Court recently reminded district courts analyzing ERISA class actions to "use existing tools at their disposal to screen out meritless claims before discovery." *Cunningham v. Cornell Univ.*, 604 U.S. 693, 708 (2025).

## IV. PLAINTIFFS' RECORDKEEPING CLAIM FAILS UNDER ERISA.

The Court dismissed Plaintiffs' previous recordkeeping claim because Plaintiffs relied on inappropriate comparators which lacked context and therefore failed under ERISA's pleading standards. ECF No. 58, p. 11-18. But Plaintiffs' SAC did not fix these issues. Instead, Plaintiffs reassert an almost identical, and equally deficient, excessive recordkeeping claim which follows the well-worn path of hundreds of similar lawsuits filed in the last decade.[7] Plaintiffs' allegations do not provide the context required under ERISA, and the SAC should be dismissed for failure to

[7] Daniel Aronowitz, *2023 Mid-Year Update on Excess Fee and Imprudence Litigation*, Euclid Fiduciary (July 13, 2023), https://encorefiduciary.com/2023-mid-year-update-on-excess-fee-and-imprudence-litigation/.

state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**A. Plaintiffs' Recordkeeping Claim Fails Under ERISA's Standards.**

In 2023, the Tenth Circuit provided a thorough analysis of the developing caselaw and articulated a clear standard for plaintiffs wishing to assert ERISA claims in this Circuit – "[w]hen assessing a duty of prudence claim at the pleading stage, courts must engage in a 'careful, context-sensitive scrutiny of a complaint's allegations' in order to 'divide the plausible sheep from the meritless goats.'" *Matney,* 80 F.4th at 1146 (quoting *Fifth Third Bancorp*, 573 U.S. at 425).

In *Matney,* the Tenth Circuit adopted the Eighth Circuit's meaningful benchmark standard, which prevents plaintiffs from comparing recordkeeping fees between plans that did not receive the same recordkeeping services. 80 F.4th at 1157-58 (adopting the Eighth Circuit's meaningful benchmark standard articulated in *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 279 (8th Cir. 2022)). The Tenth Circuit was explicit that plaintiffs cannot rely on conclusory allegations that all recordkeeping services are similar to skirt the meaningful benchmark standard and compare plans with different recordkeeping services. *Matney,* 80 F.4th at 1158. The Tenth Circuit also affirmed that conclusory allegations that fiduciaries should conduct an RFP every three to five years "does not raise a plausible inference of imprudence." *Id.* at 1156. Finally, *Matney* held recordkeeping claims that are premised on comparisons to plans that did not satisfy the meaningful benchmark standard, fail to state a claim, and should be dismissed under Rule 12(b)(6). *Id.* at 1158.

And the Tenth Circuit's *Matney* decision is not an outlier or controversial. In fact, the Eighth, Second, and Sixth Circuits have all subsequently relied on *Matney* and provided additional context for plaintiffs attempting to plead excessive recordkeeping claims under ERISA's context-specific pleading standards. *See England v. Denso Int'l Am. Inc.*, 136 F.4th 632 (6th Cir. 2025); *Boyette v. Montefiore Med. Ctr.*, No. 24-1279, 2025 U.S. App. LEXIS 391, at *3-4 (2d Cir. Jan. 8,

2025); *Barrett v. O'Reilly Auto., Inc.*, 112 F.4th 1135 (8th Cir. 2024); *Singh v. Deloitte LLP*, 123 F.4th 88 (2d Cir. 2024).

In *Barrett*, the Eighth Circuit rejected plaintiffs' conclusory allegations that all recordkeeping services are similar and affirmed that comparing plans with different service codes on their respective Form 5500s did not satisfy the meaningful benchmark standard and failed to state a claim under ERISA. 112 F.4th at 1139. The court also held that plaintiffs' disregard that the challenged plan paid trustee fees to its recordkeeper, and failure to address this fact in the complaint or through the selection of comparator plans, meant the allegations lacked context and failed to state a claim. *Id.* The court found comparing plans with different services was "like trying to compare the costs of two otherwise identical grocery baskets, except one contains filet mignon and the other does not. We would expect the one with the steak to cost more." *Id.*

In *Singh*, the Second Circuit rejected conclusory RFP allegations and affirmed dismissal of a similar claim because plaintiffs' allegations were premised on comparisons between plans receiving different recordkeeping services. 123 F.4th at 94; *see also Boyette*, 2025 U.S. App. LEXIS 391, at *3-4 (rejecting an allegation that all recordkeeping services are "fungible" and affirming that fee comparisons between plans that received different services did not state a claim under ERISA). The court also held that for comparator plans to satisfy the meaningful benchmark standard the direct and indirect fees, as documented on the respective Form 5500s, must be consistent with the challenged plan's payment of its recordkeeper. *Singh*, 123 F.4th at 95. Likewise, a single year of the comparators' alleged recordkeeping fees was insufficient to infer the challenged plan's fees were excessive during the class period. *Id.* at 95-96.

And in *England*, the Sixth Circuit also affirmed that variations in recordkeeping services meant plaintiffs' comparators did not satisfy the meaningful benchmark standard. 136 F.4th at

637. Plaintiffs' generic allegations that all recordkeeping services are fungible did not justify the fee comparisons to plans with unique recordkeeping services. *Id.* The Sixth Circuit also noted that a 56% disparity in the alleged fees of plaintiffs' comparators (which were all allegedly reasonable) revealed that cost disparities alone did not provide sufficient context to infer imprudence. *Id.*

Plaintiffs' recordkeeping allegations continue to suffer from the same flaws as the allegations made in the cases cited above. Indeed, Plaintiffs' SAC includes almost identical allegations that all services are "common" and, do not limit their fee comparisons to comparators with same recordkeeping services like in *Matney, Singh, Barrett,* and *Denso*. Here, just like the FAC, the Plan and comparator plans received different recordkeeping services, and the comparator plans compensated their recordkeepers in different ways than the Plan. Under *Matney* and this Court's Order, Plaintiffs' recordkeeping claim should be dismissed with prejudice.

### B. Plaintiffs' Recordkeeping Claim is Implausible Against the Backdrop of the Plan's Recordkeeping Agreements and Participant Disclosures.

Plaintiffs' second attempt to plead that the Plan paid excessive recordkeeping fees fails because Plaintiffs ignore essential facts that contradict their claims. Defendants' previous Motion to Dismiss attached the Plan's Intrust fee agreements, which describe the Plan's recordkeeping fees. *See* ECF No. 28-17 – 28-19.[8] These fee agreements demonstrate that Intrust charged the Plan between $20 and $30 per participant in recordkeeping fees during the Class Period. *Supra* p. 3. The Plan's yearly § 404(a) disclosures to participants further confirm these fees. *See* Exs. 6-10 (disclosing the Plan's recordkeeping fee, which matches the Intrust agreements). The Plan's

[8] Because these were publicly filed in Defendants' previous Motion to Dismiss, Plaintiffs can no longer argue they are "improper" or "withheld" as a grounds for disregarding their contents at this stage of litigation. ECF No. 39, p. 7.

undisputed recordkeeping fees are far less than the $49 per participant that the SAC alleges is reasonable, which warrants dismissal of Plaintiffs' claims. *See* ¶ 107.

Plaintiffs' choice to ignore the Plan's contractual recordkeeping fees does not mean the Court must defer to the SAC's inflated fees. In affirming the dismissal of a similar recordkeeping claim in *Matney*, the Tenth Circuit took judicial notice of the Plan's recordkeeping contract because it was available to the plaintiff when drafting the complaint. 80 F.4th at 1158 n.19.[9] Specifically, the Tenth Circuit held that plaintiff's recordkeeping allegations were contradicted by the agreement's terms. *Id.* at 1158 ("[plaintiff's] allegation that the Plan's services were only 'ministerial in nature' seems contradicted by the [recordkeeping agreement]…"). The same is true here—the Plan's recordkeeping fee agreements and participant disclosures were available to Plaintiffs, and the SAC's significantly inflated fee is contradicted by the plain terms of the Intrust fee agreements and the participant disclosures.

Instead of using the Plan's contractual recordkeeping fee, the SAC, like the previous complaint, calculates the Plan's alleged recordkeeping fee by dividing Intrust's total compensation from Schedule C of the Plan's Form 5500 by the total number of participants. ¶ 54. But Intrust's total compensation includes more than the Plan's recordkeeping fees. *See* Ex. 3, 2013 Intrust Fee Agreement (showing Intrust's total fees include trustee and recordkeeping services); Ex. 4, 2019 Intrust Fee Agreement (same); Ex. 5, 2023 Intrust Fee Agreement (same); *see also* Ex. 6, 2020 Alliance Coal § 404(a), p. 2; Ex. 7, 2021 Alliance Coal § 404(a), p. 2; Ex. 8, 2022 Alliance Coal § 404(a), p. 8; Ex. 9, 2023 Alliance Coal § 404(a), p. 8; Ex. 10, 2024 Alliance Coal § 404(a), p. 9.

---

[9] *See also GFF Corp.*, 130 F.3d at 1384-85 (taking judicial notice of an essential contract that plaintiff selectively ignored and affirming dismissal based on its contents); *Ferrotec, Inc. v. Cummins, Inc.*, No. 5-cv-1174-MSK-MEH, 2006 U.S. Dist. LEXIS 113515, at *4-5 (D. Colo. Sept. 1, 2006) (taking judicial notice of contracts that were "central to the Complaint").

Thus, the fees alleged in the SAC are not an appropriate metric to challenge the Plan's recordkeeping fees. *Matousek*, 51 F.4th at 279 (holding total compensation from Schedule C of a Form 5500 is not a sound or meaningful benchmark to challenge recordkeeping fees when it includes additional non-recordkeeping services); *Barrett*, 112 F.4th at 1139 (affirming dismissal of a recordkeeping claim because the challenged plan's fees included trustee fees but the comparator plans did not).

The SAC's alleged fee is also improperly inflated because Plaintiffs fail to address that Plan forfeitures were used to pay a substantial portion of the Plan's administrative fees and were not charged to participants. Ex. 11, 2018 Form 5500, p. 29 ($328,651 of forfeitures allocated towards the Plan's administrative expenses); Ex. 12, 2019 Form 5500, p. 29 ($386,510); Ex. 13, 2020 Form 5500, p. 31 ($299,193); Ex. 14, 2021 Form 5500, p. 30 ($390,967); Ex. 15, 2022 Form 5500, p. 30 ($344,759); Ex. 16, 2023 Form 5500, p. 31 ($168,484); Ex. 17, 2024 Form 5500, p. 31 ($83,696). In other words, even if Intrust's total compensation from the Form 5500s was the appropriate metric, Plaintiffs artificially inflate that fee by failing to account for the forfeitures that were used to reduce participants' portion of that fee. And in the FAC, Plaintiffs acknowledged that forfeitures were used to pay administrative fees. *See* ECF No. 58, p. 6 n.6, 23 (dismissing the forfeiture claim and noting that Plaintiffs acknowledge that forfeitures were used to reduce recordkeeping fees).

Furthermore, since 2024, Alliance Coal has paid the Plan's recordkeeping fees. Ex. 9, 2023 Alliance Coal § 404(a), p. 8; Ex. 10, 2024 Alliance Coal § 404(a), p. 8. Plaintiffs miss that fact by failing to properly analyze the Plan's annual § 404(a) disclosures that they received. Thus, despite the SAC's allegations, Plaintiffs' claims end in 2023 because no participant has paid recordkeeping

fees since that time. This further underscores that the SAC lacks the details required by ERISA's context specific pleading standards.

ERISA requires context. Plaintiffs' selective omission of the Plan's recordkeeping fee, which was judicially noticeable and available to Plaintiffs at the time they drafted the SAC, does not satisfy this standard. The Intrust fee agreements and § 404(a) disclosures demonstrate the Plan paid less than the reasonable fee alleged in the SAC and the SAC should be dismissed for failure to state a claim.

### C. Plaintiffs' Fee Comparators Do Not Satisfy the Meaningful Benchmark Standard.

Even if the Court decides not to consider the Intrust fee agreements or § 404(a) disclosures, Plaintiffs' remaining allegations still fail to state a claim. The Tenth Circuit's *Matney* decision, this Court's prior Order, and subsequent guidance from other appellate courts confirm meaningful benchmarks are a crucial component of a plausibly pled recordkeeping claim. *Matney*, 80 F.4th at 1157-58 (affirming dismissal of a recordkeeping claim which relied on comparisons that did not satisfy the meaningful benchmark standard); ECF No. 58, p. 10-16; (same) *Barrett*, 112 F.4th at 1139 (same); *Singh*, 123 F.4th at 94 (same); *England*, 136 F.4th at 637 (same); *Boyette*, 2025 U.S. App. LEXIS 391, at *3-4 (same). To satisfy this standard, Plaintiffs must allege sufficient context that demonstrates to the Court that underlying fee comparisons are limited to comparators with similar recordkeeping services. As in the FAC, none of the fee comparisons in the SAC satisfy this standard, and the SAC must be dismissed.

#### 1. The SAC's New Comparator Plans Do Not Satisfy the Meaningful Benchmark Standard.

Plaintiffs' previous recordkeeping claim compared Intrust's total compensation to the fees of five comparator plans. ECF No. 27, ¶ 112. Defendants moved to dismiss that recordkeeping claim on the grounds that each of the comparator plans received a different set of recordkeeping

services as indicated on their respective Form 5500s. ECF No. 28, p. 10. The Court agreed and dismissed Plaintiffs' claims because they "fail[ed] to allege that the comparator plans actually did provide the same quality or even the same type of service as Intrust." ECF No. 58, p. 12. Rather than address this legal flaw, the SAC repeats it.

As in the FAC, **none** of the Plaintiffs' comparators received the same services as the Plan according to the SAC's own allegations. ¶ 103. This Court, this Circuit, and courts around the country, affirm that these types of comparisons are insufficient to state a plausible recordkeeping claim under ERISA. ECF No. 58, p. 15; *Matney*, 80 F.4th at 1158; *Barrett*, 112 F.4th at 1139 ("What the plaintiffs are asking us to do is draw an inference of mismanagement from the differing costs of two grocery baskets with different items. We would not expect them to cost the same, so their approach doesn't work."); *Singh*, 123 F.4th at 94-95; *Boyette*, 2025 U.S. App. LEXIS 391, at *3-4; *Matousek*, 51 F.4th at 280; *Mateya v. Cook Grp. Inc.*, No. 1:22-cv-1271-RLY-TAB, 2023 U.S. Dist. LEXIS 124838, at *9 (S.D. Ind. June 16, 2023) ("alleging every recordkeeper in the national market provides the same services and that the [challenged plan] is more expensive than other plans is not sufficient to state a claim…."). As this Court previously held, comparing recordkeeping fees between plans with different recordkeeping services fails under ERISA's context-specific pleading standards. Crucially, Plaintiffs do not allege "the comparator plans actually did provide the same quality or even the same type of service as Intrust." ECF No. 58, p. 12. Thus, Plaintiffs' new comparators fail for the same reason their previous ones failed.

Further, the broad range of alleged reasonable recordkeeping fees paid by Plaintiffs' comparator plans confirms that price disparities alone do not infer imprudence. ECF No. 58, p. 13 (citing *Singh*, which held the range of reasonable fees for plaintiffs' comparator plans did not support their claim); *see also England*, 136 F.4th at 637 (holding a 56% disparity between the

comparator plans' fees did not infer imprudence). For example, here the SAC alleges that the recordkeeping fees for the 2022 Hilti Retirement Savings Plan ($29.26) and the 2022 EPAM Systems, Inc. 401(k) Plan ($59.87) are reasonable. ¶ 103. However, there is a 104% price disparity between these fees, which demonstrates that even Plaintiffs agree there is a broad range of reasonable fees. This is why a plausibly pled recordkeeping claim must address the "surrounding context" (including recordkeeping services) to survive dismissal.[10] *England*, 136 F.4th at 637.

By failing to adequately address the Plan's or the comparators' recordkeeping services, Plaintiffs have not provided adequate grounds to compare the fees alleged in the SAC. Because the Court again has no grounds to infer that the Plan's fees were excessive, the SAC must be dismissed for failure to state a claim.

**2. The SAC's Fee Comparisons Are Also Flawed Because the New Comparators Were Paid Indirect Recordkeeping Fees.**

The differences in the recordkeeping services provided to the Plan and Plaintiffs' comparator plans alone are sufficient to find that the comparators are not meaningful benchmarks. But Plaintiffs' new comparator plans also fall short of the meaningful benchmark standard because most of the comparators paid their recordkeeper through direct and indirect compensation, which makes comparisons to the Plan's exclusively direct compensation to Intrust inappropriate. *Peeler v. Bayada Home Health Care, Inc.*, No. 1:24-cv-231-MR, 2026 U.S. Dist. LEXIS 14223, at *25 (W.D.N.C. Jan. 27, 2016) ("the requisite like-for-like comparison also extends to the form of recordkeepers' compensation"); *Garnick v. Wake Forest Univ. Baptist Med. Ctr., Bd.*, 629 F. Supp.

[10] And even where the comparators have the same service codes as each other, the fees are different. *See* ¶ 103 (*Cf.* 2024 Steel Partners comparator showing service codes of 37, 60, 64, 65 and fees of $35.35 per participant *with* 2024 Muckleshoot comparator showing the same service codes of 37, 60, 64, 65, but fees of $58.61 (a price disparity of 65.8%)).

3d 352, 364 (M.D.N.C. 2022) (comparing "direct and indirect compensation to only direct recordkeeping fees" is not "apples-to-apples").

The SAC acknowledges that indirect fees to a recordkeeper, which are not included on a Form 5500, can increase the recordkeeper's total compensation and change their fee calculations. ¶ 93 n.16. Here, the Plan's Form 5500 shows that Intrust *did not* receive indirect compensation. Ex. 11, 2018 Form 5500, p. 7; Ex. 12, 2019 Form 5500, p. 7; Ex. 13, 2020 Form 5500, p. 8; Ex. 14, 2021 Form 5500, p. 7; Ex. 15, 2022 Form 5500, p. 7; Ex. 16, 2023 Form 5500, p. 7; Ex. 17, 2024 Form 5500, p. 7. In other words, all of Intrust's fees are documented on the Form 5500 and included in SAC's fee calculations. But instead of using comparators that did the same, the SAC relies almost solely on plans that paid the recordkeeper through direct *and indirect* compensation. *See, e.g.*, Ex. 18, AthenaHealth 2018 Form 5500, p. 6; Ex. 19, Addecco 2018 Form 5500, p. 6; Ex. 20, Comcast 2018 Form 5500, p. 6; Ex. 21, CSAA 2019 Form 5500, p. 6; Ex. 22, Capgemini 2019 Form 5500, p. 6; Ex. 23, J. Walter Thompson 2019 Form 5500, p. 6; Ex. 24, Ceridian 2020 Form 5500, p. 6; Ex. 25, Refinitiv 2020 Form 5500, p. 6; Ex. 26, Johnson Brothers 2020 Form 5500, p. 6; Ex. 27, Hallmark 2021 Form 5500, p. 6; Ex. 28, Enloe 2021 Form 5500, p. 10; Ex. 29, Protective Life 2021 Form 5500, p. 6; Ex. 30, Meriter 2021 Form 5500, p. 10; Ex. 31, Clark Group 2022 Form 5500, p. 6; Ex. 32, EPAM 2022 Form 5500, p. 6; Ex. 33, Hilti 2022 Form 5500, p. 10; Ex. 34, Marelli 2023 Form 5500, p. 10; Ex. 35, Triniplus 2023 Form 5500, p. 14; Ex. 36, Omnicell 2023 Form 5500, p. 6; Ex. 37, Axalta 2023 Form 5500, p. 6; Ex. 38, BRFHH 2023 Form 5500, p. 6; Ex. 39, LG Electronics 2024 Form 5500, p. 6; Ex. 40, Muckleshoot 2024 Form 5500, p. 6; Ex. 41, Steel Partners 2024 Form 5500, p. 6; Ex. 42, Maplebear 2024 Form 5500, p. 6.

By admitting their comparator plans were paid additional undisclosed fees compared to Intrust, Plaintiffs confirm that their comparators' fees are underestimated. Thus, the SAC's fee

comparisons lack context, are not apples-to-apples, and fail under ERISA's context-specific pleading standards. *See Singh*, 123 F.4th at 95 (rejecting fee comparisons between plans when the direct and indirect fees are not consistent); *Mateya*, 2023 U.S. Dist. LEXIS 124838, at *22 ("To state a claim, [plaintiff] needs to compare, within a given year, direct fees to direct fees, indirect fees to indirect fees, or a combination of direct and indirect fees to a combination of direct and indirect fees."). This provides additional grounds to disregard Plaintiffs' inappropriate fee comparisons and dismiss the SAC.

**3. Plaintiffs' Allegations Regarding NestEgg's Fees Are Wrong and Do Not State a Claim.**

Plaintiffs' attempt to compare the Plan's fees to Intrust during the Class Period to the Plan's total compensation to NestEgg in 2012 and 2013 also fails the meaningful benchmark standard.[11] ¶ 50-54.

The plain terms of the Intrust fee agreements contradict Plaintiffs' allegations. The agreements confirm that the Plan's recordkeeping fee did not change between 2013 and 2019. Ex. 3, 2013 Intrust Fee Agreement, p. 1; Ex. 4, 2019 Intrust Fee Agreement. Thus, despite Plaintiffs' allegations, the Plan's recordkeeping fee was the same at the beginning of the Class Period as it was in 2013. *Matney*, 80 F.4th at 1158 (rejecting allegations that are contradicted by the plan's recordkeeping agreement). And in fact, the Plan's recordkeeping fee was negotiated downward since that time. Ex. 4, 2019 Intrust Fee Agreement; Ex. 5, 2023 Intrust Fee Agreement; *see also Matney,* 80 F.4th at 1156 (affirming a reduction in the plan's recordkeeping fee during the class

[11] There is a six-year statute of limitations period for Plaintiffs' imprudence claim. *See* 29 U.S.C. § 1113. Thus, the Plan's recordkeeping fees in 2012 and 2013 are outside of the Class Period, and do not provide appropriate context for Plaintiffs' claims which challenge the Plan's recordkeeping fee since 2018.

period did not support plaintiff's recordkeeping claim); *Boyette*, 2025 U.S. App. LEXIS 391, at *5 (same).

Moreover, comparisons between NestEgg's compensation in 2012 and 2013 and Intrust's compensation during the class period do not satisfy the meaningful benchmark standard articulated in the Court's previous dismissal. This Court already held that Plaintiffs' previous fee comparisons failed the meaningful benchmark standard because the service codes on the respective Form 5500s did not align. ECF No. 58, p. 12, 15-16. Here, the NestEgg service codes in 2012 and 2013 (service codes 15, 37, 50, 64) also do not align with the services for which Intrust was compensated during the Class Period (service codes 15, 37, 50, 63, 64). *Cf.* Ex. 43, 2012 Form 5500, p. 5; Ex. 44, 2013 Form 5500, p. 5; *with* Ex. 11, 2018 Form 5500, p. 7; Ex. 12, 2019 Form 5500, p. 7; Ex. 13, 2020 Form 5500, p. 8; Ex. 14, 2021 Form 5500, p. 7; Ex. 15, 2022 Form 5500, p. 7; Ex. 16, 2023 Form 5500, p. 7; Ex. 17, 2024 Form 5500, p. 7. Therefore, these fee comparisons are also inappropriate under ERISA and are insufficient to sustain a claim under ERISA's context-specific pleading standards.

#### 4. Using Different Comparators for Every Year of the Class Period Does Not Satisfy the Meaningful Benchmark Standard.

Plaintiffs also fail to satisfy the meaningful benchmark standard because the SAC relies on different comparator plans for nearly every year of the Class Period. ¶ 103. These allegations do not provide adequate context to infer that the Plan's fees were excessive relative to the comparators during the Class Period.[12] *Singh*, 123 F.4th at 95-96 (affirming that comparing the challenged

---

[12] Indeed, a closer look at information that is selectively omitted from the SAC reveals that Plaintiffs cherry-picked comparator plan data to plead a recordkeeping claim. For example, Plaintiffs include data on the AthenaHealth Plan for 2018 when the Schedule C fees to Fidelity were $327,148. ¶ 103. But the very next year, which is selectively omitted from the SAC, Fidelity's Schedule C fees were $544,302. Ex. 18, 2019 AthenaHealth Form 5500, p. 6. This type of selective pleading fails under ERISA's context specific pleading standards.

plan's fees to a single year of comparator plans' data was insufficient to state a recordkeeping claim); *Mateya*, 2023 U.S. Dist. LEXIS 124838, at *23 ("But prices change year-to-year, so costs in one year are not necessarily comparable to costs in another"); *Miller v. Pfizer, Inc.*, No. 1:23-cv-594, 2024 U.S. Dist. LEXIS 252014, at *8-9 (W.D. Mich. Oct. 17, 2024) (holding comparisons that are not consistent across the class period allows Plaintiffs "to cherry-pick data, and it prevents the court from finding a plausible claim here.").

According to the SAC, the Plan's recordkeeping fees changed every year. *See* ¶ 93. But by failing to allege the comparator plans' fees for every year of the Class Period, the Court does not have the necessary context to make any inferences about the Plan's fees compared to these individualized data points. Accordingly, the snapshots of comparator data in the SAC also fall short of the meaningful benchmark standard and warrant dismissal of the SAC.

* * *

Plaintiffs' fee comparisons do not satisfy the meaningful benchmark standard. Neither the NestEgg fees nor the SAC's comparators are appropriate under ERISA or this Court's prior opinion because those comparators received different sets of services. Plaintiffs also improperly rely on comparator plans that paid undisclosed indirect fees and fail to allege adequate context for their comparators over the entire Class Period. Each of these legal flaws provides grounds to disregard the SAC's inappropriate fee comparisons and dismiss Plaintiffs' claims.

**D. The SAC Repeats Legally Flawed Arguments Previously Rejected by This Court.**

When the Court disregards the SAC's inappropriate fee comparisons for failure to satisfy the meaningful benchmark standard, all that remains are conclusory and flawed arguments that this Court previously rejected. ¶ 54, 60, 62, 69-74, 89. The SAC does not allege any additional

context or reasons to revisit these failed arguments, and the Court should once again dismiss these allegations for the same reasons articulated in the previous Order.

**1. The SAC Repeats the Flawed Arguments That Recordkeeping Services Are Fungible and That All Recordkeepers Are Capable of Providing the Plan's Recordkeeping Services.**

Plaintiffs' previous complaint attempted to justify the comparisons between plans with different recordkeeping services by arguing that "the level, number, and character of participant services provided by the record keeper have minimal impact upon the costs of providing recordkeeping." ECF No. 27, ¶ 76. Plaintiffs' previous complaint also argued that all "recordkeepers are capable of providing the same quality of service…." *Id.* at ¶ 87; *see also id.* at ¶ 74 (making the same argument). The Court considered and rejected these allegations holding, "plaintiffs cannot meet their burden by simply alleging that all RKA services are fungible and therefore the fact that comparator plans have lower RKA fees amounts to a breach of the fiduciary duty of prudence." ECF No. 58, p. 14. The Court also held being capable of providing similar services did not mean they actually "provided the same or even similar services to their respective plans." *Id.* at 16 (rejecting Plaintiffs' allegation that the services were similar when the Form 5500s indicated unique service codes as compared to the Plan).

Instead of addressing these legal flaws, the SAC repeats the same flawed arguments. *See* ¶ 62 (repeating verbatim the flawed argument from FAC ¶ 76); ¶ 60 (repeating verbatim the flawed "capability" argument from FAC ¶ 74); ¶ 73 (repeating verbatim the flawed "capable" argument from FAC ¶ 87).

Plaintiffs provide no additional context to reconsider these rejected allegations, and the law has not changed since the Court's previous Order. Thus, the Court should once again reject these legally flawed and repeated allegations. ECF No. 58, p. 12-14; *see also Matney*, 80 F.4th at 1149;

*Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022); *Matousek*, 51 F.4th at 279; *England*, 136 F.4th at 637.

**2. Intrust's Experience with Large Defined Contribution Plans Still Does Not Infer a Fiduciary Breach.**

Plaintiffs' previous complaint alleged that Intrust's lack of experience with large defined contribution plans supported their claim that Alliance Coal breached its fiduciary duties in administering the Plan. ECF No. 27, ¶ 83-88. The Court rejected these allegations, finding "plaintiffs' theory to be too attenuated for it to raise an inference of imprudence." ECF No. 58, p. 17. Plaintiffs ignored this holding and copied the same six paragraphs into the SAC. ¶ 69-74. Once again, Plaintiffs provide no additional context or reason to reconsider the Court's previous holding. Thus, these allegations still do not plausibly state a claim, and the Court should once again reject them as flawed and conclusory.

**3. Plaintiffs' Conclusory RFP Allegations Are Still Insufficient to Sustain a Claim Under ERISA.**

Plaintiffs' previous complaint alleged "there is little to suggest that Defendants conducted a RFP, or at least an effective one, at reasonable intervals…" ECF No. 27, ¶ 103. The Court noted that the Tenth Circuit rejected this argument in *Matney* and held "plaintiffs fail to show how the failure to conduct an RFP amounts to imprudence" in light of the complaint's allegations that fees decreased in 2022 and 2023. ECF No. 58, p. 17-18; *see also Matney*, 80 F.4th at 1156 ("[s]imply alleging [defendants] needed to conduct regular RFPs does not raise a plausible inference of imprudence.") The SAC repeats "there is little to suggest that Defendants conducted a RFP, or at least an effective one…" and includes the same chart that alleges the Plan's fees decreased in 2022 and 2023. ¶ 54, 89. The Intrust fee agreements further indicate that the Plan's recordkeeping fee was negotiated to a lower rate in 2013, 2019, and 2023. *Supra* p. 3; *see also Matney*, 80 F.4th at

1156 (affirming a reduction in the plan's recordkeeping fee during the class period did not support plaintiff's recordkeeping claim); *Boyette*, 2025 U.S. App. LEXIS 391, at *5 (same).

*Matney* is still the law in this circuit, and the Court should once again reject this flawed legal argument under the same grounds as the previous dismissal.

## V. PLAINTIFFS' DERIVATIVE MONITORING CLAIM SHOULD ALSO BE DISMISSED.

As explained herein, Plaintiffs' recordkeeping claim fails to state a claim, and the Court has multiple grounds to dismiss this claim under ERISA. As a result, Plaintiffs' derivative monitoring claim should also be dismissed. *Matney*, 80 F.4th at 1159.

## VI. CONCLUSION.

Plaintiffs' SAC should be dismissed. Plaintiffs ignored the Plan's recordkeeping agreements and § 404(a) disclosures, which demonstrate the Plan's fees were reasonable according to their own allegations. But even if the Court does not consider the dispositive documents that confirm the fallacy of Plaintiffs' claims, the SAC's additional allegations also fail as a matter of law. Plaintiffs' SAC is comprised of comparators that do not satisfy the meaningful benchmark standard and recycled arguments previously rejected by the Court. Therefore, the Court should grant Defendants' Motion and dismiss the SAC for failure to state a claim under Rule 12(b)(6).

Dated: February 10, 2026

Respectfully submitted,

*s/ Stacey C.S. Cerrone*

Stacey C.S. Cerrone, LA Bar No. 25860
(admitted *pro hac vice*)
Howard Shapiro, LA Bar No. 11968
(admitted *pro hac vice*)
Adam R. Carlisle, LA Bar No. 39828
(admitted *pro hac vice*)
JACKSON LEWIS P.C.
601 Poydras Street, Suite 1400
New Orleans, LA 70130
Telephone: (504) 208-1755

Facsimile: (504) 208-1759
Stacey.Cerrone@jacksonlewis.com
Howard.Shapiro@jacksonlewis.com
Adam.Carlisle@jacksonlewis.com

Amelia A. Fogleman, OBA No. 16221
GableGotwals
1100 ONEOK Plaza, 100 W. 5th Street
Tulsa, OK 74103
Telephone: (918) 595-4800
Fax: (918) 595-4990
Email: afogleman@gablelaw.com
Leasa M. Stewart, OBA No. 18515
GableGotwals
BOK Park Plaza
499 W. Sheridan Avenue, Suite 2200
Oklahoma City, OK 73102
Telephone: (405) 235-5500
Fax: (405) 235-2875
Email: lstewart@gablelaw.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2026, a true and correct copy of the above and foregoing document was served via CM/ECF to the following counsel of record below:

Mark Gyandoh, markg@capozziadler.com

James Maro, jamesm@capozziadler.com

Mark Donaldson Lyons, lyonscla@swbell.net

*s/ Stacey C.S. Cerrone*
Stacey C.S. Cerrone, LA Bar No. 25860
(admitted *pro hac vice*)