**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) JOSEPH BREWER, and<br>(2) JOSHUA CHUCK, and<br>(3) JASON MOODY, and individually and on behalf of all others similarly situated,<br>Plaintiffs,<br>v.<br><br>(1) ALLIANCE COAL, LLC, and<br>(2) THE BOARD OF ALLIANCE COAL, INC., and<br>(3) THE 401(k) INVESTMENT COMMITTEE OF ALLIANCE COAL, INC. and<br>(4) JOHN DOES 1-20,<br>Defendants. | ) | Civil Action No.: 4:24-cv-00406-CVE-SH |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Plaintiffs' Opposition (ECF No. 65) misrepresents and ignores inconvenient facts in another failed attempt to proceed to costly class action discovery based on alleged breaches of fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendants' Motion to Dismiss (ECF No. 63) and this Court's prior Order (ECF No. 58), articulate the context specific pleading standards established by the United States Supreme Court and the Tenth Circuit Court of Appeals for Plaintiffs' claims. Again, instead of addressing these standards and the facts specific to the Alliance Coal, LLC and Affiliates Profit Sharing and Savings Plan ("Plan"), Plaintiffs' Opposition misdirects the Court to out-of-circuit holdings and ignores Tenth Circuit pleading standards and the Plan's contractual recordkeeping fee. Under *Matney*, Plaintiffs cannot compare recordkeeping fees across plans that received different services. Plaintiffs' Second Amended Complaint ("SAC") nevertheless relies exclusively on precisely those improper comparisons. Their renewed attempt to justify this approach is unavailing; it merely repackages the same flawed premise—that all recordkeeping services are materially similar—a proposition squarely rejected by *Matney* and this Court.

Plaintiffs' Opposition confirms that this case turns on a fundamental disagreement of ERISA's pleading standards. Plaintiffs ask this Court to accept fee comparisons untethered from services and ignore judicially noticeable plan documents. That is precisely what *Matney* forbids. Under Plaintiffs' theory, the "meaningful benchmark" requirement collapses into generalized allegations that fees were "too high," and renders Rule 12(b)(6) meaningless. But under *Matney* and ERISA's context specific review, Plaintiffs' SAC should be dismissed for the same reasons as the First Amended Complaint ("FAC").

## I. Plaintiffs Ask the Court to Disregard Tenth Circuit Precedent.

In *Matney v. Barrick Gold of N. Am.*, the Tenth Circuit was explicit, plaintiffs have "the burden to provide meaningful benchmarks" and "the relevant comparative data point in this

context is the services offered for the price charged." 80 F.4th 1136, 1157 (10th Cir. 2023). The Tenth Circuit also held allegations that all recordkeeping services are fungible and conclusory allegations regarding fiduciaries' RFP sequence fall short of ERISA's pleading standards. *Id.* at 1156, 1158. This Court applied *Matney*'s pleading standards to Plaintiffs' FAC and held a plausible excessive recordkeeping claim that relies on fee comparisons must be limited to plans with the same recordkeeping services. ECF No. 58, p. 12 (dismissing Plaintiffs' previous claim for failure "to allege that the comparator plans actually did provide the *same* quality or even the *same* type of service as Intrust.") (emphasis added). But the SAC repeats the same mistake—relying on comparisons of the Plan's fees to plans with different services. ECF No. 59, ¶ 103.

In Opposition, Plaintiffs again ask the Court to disregard *Matney* and rely on out-of-circuit decisions in *Mator v. Wesco Distrib.*, 102 F.4th 172 (3d Cir. 2024), *Kruchten v. Ricoh USA, Inc.*, No. 23-1928, 2024 U.S. App. LEXIS 18169 (3d Cir. July 24, 2024), and *Perkins v. United Surgical Partners Int'l, Inc.*, No. 23-10375, 2024 U.S. App. LEXIS 8804 (5th Cir. Apr. 11, 2024), which are distinguishable and directly conflict with *Matney*. ECF No. 65, p. 14. First, Plaintiffs made, and the Court rejected, these exact arguments in the previous round of briefing. ECF No. 39, p. 9-10, ECF No. 58, p. 12-18. Second, as Defendants previously explained (ECF No. 41, p. 4), these out-of-circuit, distinguishable decisions do not support Plaintiffs' claims. In *Mator*, plaintiffs included one comparator with the *same* service codes as the challenged plan and five comparators with the same recordkeeper. 102 F.4th at 186. In *Kruchten*, the Third Circuit found all plans "cited as comparators received the same services, measured by Form 5500 service codes…" 2024 U.S. App. LEXIS 18169, at *7. And in *Perkins*, the Fifth Circuit did not adopt the meaningful benchmark standard. 2024 U.S. App. LEXIS 8804. But here, unlike *Mator* and *Kruchten*, Plaintiffs do not identify any comparator plans with the same service codes as the Plan and *Matney*

requires Plaintiffs to identify meaningful benchmarks, unlike *Perkins*. As a result, Plaintiffs' contrary case law does not provide grounds to sustain their claims.

In short—the meaningful benchmark standard applies to Plaintiffs' claims. Here, Plaintiffs' renewed fee comparisons do not support a plausible inference that the Plan paid excessive fees because **none** of the SAC's comparison plans received the same recordkeeping services as the Plan. Plaintiffs' claims must be dismissed.

**A. None of Plaintiffs' Comparators Received the Same Services as the Plan.**

Plaintiffs' Opposition argues the SAC is filled with "significant new allegations," but the only notable additions are thirty-one new comparator plans which suffer from the identical legal flaws as the FAC's comparators. ECF No. 59, ¶ 103. Each of the SAC's fee comparisons fails to satisfy the meaningful benchmark standard because *none* of Plaintiffs' comparators received the *same* services as the Plan. *Id.*; ECF No. 63, p. 13. Plaintiffs nonetheless assert that Form 5500 service codes can suffice to state a recordkeeping claim under ERISA. ECF No. 65 at 1, 14–16. That contention misses the mark. Defendants do not argue that Form 5500 service codes are categorically improper; rather, as explained in the Motion to Dismiss—and as this Court has already held—those codes must be identical for any fee comparisons to satisfy the meaningful benchmark standard. *Matney*, 80 F.4th at 1157-58; *see also England v. Denso Int'l Am. Inc.*, 136 F.4th 632, 637 (6th Cir. 2025); *Barrett v. O'Reilly Auto., Inc.*, 112 F.4th 1135, 1139 (8th Cir. 2024); *Singh v. Deloitte LLP*, 123 F.4th 88, 94 (2d Cir. 2024). And here, none of the alleged comparators, including the Plan's 2012 and 2013 5500s, have the same service codes.

Plaintiffs argue their comparators have "the same or more services as the Plan." ECF No. 65, p. 17. But that argument is contradicted by the SAC's allegations which reveal, just like the FAC, several comparators received less services than the Plan and none of the comparators received the same set of services as the Plan. ECF No. 59, ¶ 103. Plaintiffs previously asked the

Court to ignore discrepancies in Form 5500 service codes to accept the fee comparisons in the FAC. ECF No. 39, p. 11-12. The Court specifically rejected those arguments and dismissed the recordkeeping claim for failing to satisfy the meaningful benchmark standard. ECF No. 58, p. 11-12. Now Plaintiffs rely on Form 5500 service codes again while simultaneously asking the Court to disregard discrepancies whenever they undermine Plaintiffs' theory—for example, by rebranding them as mere "fee structures." ERISA does not permit plaintiffs to treat Form 5500s as authoritative when helpful and irrelevant when not. These comparisons fail under *Matney*'s meaningful benchmark standard, which is fatal to Plaintiffs' recordkeeping claim.

Here, other than changing the comparator plans, the SAC adds nothing new. Specifically, the SAC does not explain how plans with different recordkeeping service codes, which failed to state a claim in the FAC, should be treated differently this time. Indeed, Plaintiffs' attempt to argue around the details of their comparators' services is no different from the argument that all recordkeeping services are fungible, which was squarely rejected by the Tenth Circuit. *Matney*, 80 F.4th at 1158. Thus, under *Matney* and the Court's previous holding, the SAC's comparators do not satisfy the meaningful benchmark standard and fail to state a claim. ECF No. 63, p. 13.

**B. Plaintiffs Are Wrong About the Impact of Indirect Recordkeeping Fees.**

Defendants' Motion to Dismiss identified that almost all of Plaintiffs' comparators paid their recordkeeper additional, undisclosed indirect fees. ECF No. 63, p. 14-16. And when indirect fees are omitted from a recordkeeping claim it "provides limited insight into whether *total* recordkeeping fees paid by the [p]laintiffs were excessive, as compared to other plans." *Singh*, 123 F.4th at 95.

Plaintiffs' argument that their comparators' indirect recordkeeping fees were excluded from the SAC misses the mark. The Plan only pays Intrust through direct compensation; thus Plaintiffs' SAC fee calculations include the Plan's *total* compensation to Intrust. ECF No. 63, p. 15. But

virtually all of Plaintiffs' comparators paid their recordkeeper through direct *and* indirect compensation. *Id.* And the Form 5500 does not require plan sponsors to disclose eligible indirect compensation "for which the plan received the required disclosures." *See* ECF Nos. 63-19, p. 7 (Columns (f), (g)). Here, each of Plaintiffs' comparators that paid their recordkeeper through indirect compensation indicated that they received the required disclosures and therefore did not disclose a portion of their indirect fees on their Form 5500s. ECF Nos. 63-19, p. 7; 63-20, p. 7; 63-21, p. 7; 63-22, p. 7; 63-23, p. 7; 63-24, p. 7; 63-25, p. 7; 63-26, p. 7; 63-27, p. 7; 63-28, p. 7; 63-29, p. 11; 63-30, p. 7; 63-31, p. 11; 63-32, p. 7; 63-33, p. 7; 63-34, p. 11; 63-35, p. 11; 63-36, p. 15; 63-37, p. 7; 63-38, p. 7; 63-39, p. 7; 63-40, p. 7; 63-41, p. 7; 63-42, p. 7; 63-43, p. 7. The flaw is not merely that Plaintiffs' comparators may have paid additional indirect fees, but that Plaintiffs' methodology compares the Plan's *total* compensation to a *subset* of comparators' fees. That asymmetry is implausible regardless of the amount of undisclosed fees and does not satisfy the meaningful benchmark standard. *Singh*, 123 F.4th at 95; *see also* ECF No. 63, p. 14-15.

**C. NestEgg's Fees Are Not a Meaningful Benchmark.**

The SAC concedes that the services the Plan compensated NestEgg for in 2012 and 2013 are different than the services the Plan compensated Intrust for during the Class Period. ECF No. 59, ¶ 55 ("The services provided by INTRUST *changed* very little after INTRUST became the Plan's recordkeeper…") (emphasis added). In Opposition, Plaintiffs change course and insist "[t]he RKA services provide by NestEgg and INTRUST *remained identical* through at least 2023." ECF No. 65, p. 5 (emphasis added). But the Opposition's chart confirms the service codes are not identical. *Id.*

Next, Plaintiffs attempt to persuade the Court to disregard discrepancies in the service codes by asserting that the differing codes reflect "a fee structure—not a service." ECF No. 65, p. 6. That argument is unavailing. As explained above, the meaningful benchmark standard requires

Plaintiffs to limit fee comparisons to plans with the same service codes. *Supra*, p. 3-4. Also, as evidenced by the direct and indirect fees argument above, comparing fees between plans with different fee structures does not satisfy the meaningful benchmark standard. *Supra*, p. 4-5. Finally, Plaintiffs do not articulate grounds to credit their allegation that the Plan's recordkeeping fee changed dramatically between 2013 and 2014 despite the fact that participant disclosures and the Plan's fee agreements confirm the fees did not change over that time period.[1]

Plaintiffs' failure to address the specific circumstances relevant to the Plan's fees in 2012 and 2013 means their allegations lack the context necessary to survive ERISA's pleading standards.

**D. The Snapshots of Comparators' Fees Do Not Provide Sufficient Context.**

Plaintiffs' Opposition argues their comparators' single year fee data suffices because "it cannot be assumed that the plans would have the same comparability of size and service every year." ECF No. 65, p. 18. But whether a comparator's size or services changed during the Class Period is relevant information, because such changes might mean that comparator is not a meaningful benchmark. Indeed, even the Plan's fees changed year to year based on Plaintiffs' allegations. *See* ECF No. 59, ¶ 103. Therefore, showing how comparators' services, size, and fees changed during the Class Period is necessary to contextualize the comparisons. But the SAC does not allege sufficient context for the Court to make that determination.

For example, Plaintiffs do not address the example comparator described in Defendants' Motion to Dismiss (*see* ECF No. 63, p. 17 n.12). In 2018, the AthenaHealth plan had 5,561 participants; service codes of 37, 60, 64, and 65; recordkeeper compensation of $327,148; and total assets under management of $271,680,313. *See* ECF No. 59, ¶ 103. In 2019, the same plan

[1] Contrary to Plaintiffs' arguments, Defendants are not asking the Court to interpret documents in their favor. The fee agreements and participant disclosures were available to Plaintiffs and speak for themselves. There is no interpretation necessary to recognize the fees disclosed in these documents. Nor have Plaintiffs alleged that the fees in those documents are wrong.

had 5,166 participants; the same service codes as 2018; recordkeeper compensation of $544,302; and total assets under management of $346,822,242. Ex. 45, 2019 AthenaHealth Form 5500, p. 2, 6, 12. This plan's 2019 metrics all fall within the range of participants and assets of the comparators in the SAC. *See* ECF No. 59, ¶ 103. But Plaintiffs omitted the AthenaHealth plan's 2019 data—likely because it showed that plan's fees increased by 79% percent. But the higher 2019 fee is necessary to put AthenaHealth's 2018 fees in context (as would AthenaHealth's fees for the rest of the Class Period). By failing to allege comparator plan information over the entire Class Period, Plaintiffs fail to satisfy the context specific pleading standards required here.[2]

**E. There Are No Grounds to Revisit Previously Dismissed Allegations.**

Defendants' Motion to Dismiss identified numerous SAC allegations that originated in the FAC and were previously rejected by this Court. ECF No. 63, p. 18-21. In Opposition Plaintiffs argue these flawed allegations must be reconsidered simply because the SAC alleges new comparator plans. ECF No. 65, p. 23-25. But nothing about Plaintiffs' new fee comparisons warrants reconsideration of the same allegations this Court already rejected. These arguments still conflict with *Matney* and do not infer a fiduciary breach in this Circuit.

**II. Plaintiffs Selective Ignorance of the Plan's Actual Recordkeeping Fee Is Insufficient to State a Claim.**

Plaintiffs have the Plan's actual recordkeeping fee. The Plan's recordkeeping fee is disclosed in yearly participant disclosures. ECF No. 63, p. 3. And Plaintiffs reference these

---

[2] ECF No. 63, p. 17-18 (gathering cases which support granting dismissal on these grounds). Plaintiffs' attempts to distinguish these cases are unpersuasive. *Singh*, *Mateya*, and *Miller* each dismissed recordkeeping claims premised on comparisons to a single year of comparators' fees. These courts dismissed similar claims because ERISA's pleading standards required information on the comparator plans during the entire Class Period to justify a fee comparison. Plaintiffs' SAC makes the same mistake. Just because the SAC includes different single year data comparisons for each year does not change the fact that the Court lacks the necessary information for the comparator plans over the entire Class Period to justify the SAC's fee comparisons.

disclosures in the SAC. ECF No. 59, ¶ 84. Further, Defendants attached the Plan's recordkeeping fee agreements in the previous round of briefing which confirm the fees disclosed to participants. *See* ECF Nos. 28-17 – 28-19. Under *Matney*, Plaintiffs must use the available documents to plausibly allege the Plan's fees are excessive. 80 F.4th at 1158 n.19. Ignoring this crucial information falls short of this standard and warrants dismissal for failure to state a claim.

Plaintiffs ask the Court to disregard the Plan's fee agreements because they are not quoted in the SAC. ECF No. 65, p. 11. This argument fails under *Matney*. The Tenth Circuit took judicial notice of the same document, at the same stage of litigation, to affirm that plaintiffs' recordkeeping allegations were contradicted by the operative contract.[3] *Matney*, 80 F.4th at 1158 n.19. Also, ERISA includes sophisticated disclosure requirements to inform participants about the fees within their defined contribution plan accounts. *See* 29 C.F.R. § 2550.404a-5. By ignoring the participant disclosure and fee agreements, Plaintiffs circumvent the purpose of these disclosures and ask the Court to sustain a claim that is meritless on the plain face of the relevant documents.[4]

For the first time in their Opposition, Plaintiffs argue that an hourly rate mentioned in the Plan's participant disclosures could explain the discrepancy between the Plan's contractual fee and the fees alleged in the SAC. *See* ECF No. 65, p. 10. First, this argument is not present in the SAC and Plaintiffs cannot amend their claims through an Opposition motion. *Kohli v. McGee Eye*

---

[3] Plaintiffs' arguments for ignoring the judicially noticeable documents are unpersuasive. First, *Navajo Nation v. Urban Outfitters, Inc.*, 935 F. Supp. 2d 1147, 1157 (D.N.M. 2013) is a trademark infringement lawsuit where the court refused to take judicial notice of "trademark file histories." This holding from a different district, under a different law, and has no impact on the Court's ability to take judicial notice of the Plan's recordkeeping agreements in light of *Matney*. ECF No. 63, p. 3 n.4; *Matney*, 80 F.4th at 1158 n.19. Likewise, *Sugar v. Tackett*, No. 1:20-cv-331-KWR-LF, 2021 U.S. Dist. LEXIS 237106, at *6-7 (D.N.M. Dec. 10, 2021), is irrelevant because it is a summary judgment decision and the court took judicial notice of the disputed document.

[4] In addition to relying on inflated fees, Plaintiffs' Opposition also does not address that since 2024 participant have not paid recordkeeping fees. *See* ECF No. 63, p. 3.

*Surgery Ctr. LLC*, No. CIV-17-542-C, 2017 U.S. Dist. LEXIS 124148, at *7 (W.D. Okla. Aug. 7, 2017) ("To the extent that Plaintiff attempts to bolster the factual allegations in her Complaint with new factual allegations in her Response to the Motion to Dismiss, such an attempt to amend a complaint is impermissible."). Second, the participant disclosures plainly state that the hourly rate compensates Intrust for "additional services." ECF Nos. 63-7, p. 3, 63-8, p. 3, 63-9, p. 9. In other words, any fees paid to Intrust pursuant to that hourly rate are for services *in addition to* the Plan's core recordkeeping services. But Plaintiffs do not challenge all Intrust fees, instead the SAC takes aim at the Plan's "***essential recordkeeping services***." *See* ECF No. 59, ¶ 57-59. As a result, the hourly rate is not relevant to Plaintiffs' claims, which is why it was not mentioned in the SAC.

### A. The Recordkeeping Fee is Not the Only Crucial Context Plaintiffs Ignore.

#### 1. Plaintiffs Fail to Address the Plan's Forfeitures Which Inflates the SAC's Fees.

Plaintiffs also fail to address that Plan forfeitures were used to reduce participants' portion of administrative fees. *See* ECF No. 63, p. 11 (identifying forfeiture totals of $328,651 (2018), $386,510 (2019), $299,193 (2020), $390,967 (2021), $344,759 (2022), $168,484 (2023), and $83,696 (2024) were used to reduce participants' share of administrative fees). Plaintiffs' Opposition argues these amounts "were negligible" but simple math reveals that forfeitures accounted for substantial portions of Intrust's total compensation:

| Year | Total Intrust Compensation on Form 5500 | Forfeitures Allocated towards Administrative Fees | % of Intrust's Total Fees Covered by Forfeitures |
|---|---|---|---|
| 2018 | $685,046 | $328,651 | 48% |
| 2019 | $943,653 | $386,510 | 41% |
| 2020 | $791,714 | $299,193 | 38% |
| 2021 | $796,837 | $390,967 | 49% |
| 2022 | $756,538 | $344,759 | 46% |
| 2023 | $440,964 | $168,484 | 38% |
| 2024 | $496,832 | $83,696 | 17% |

By failing to deduct forfeitures from the SAC's alleged fee calculations, Plaintiffs knowingly

inflated the Plan's fees. But ERISA requires context, and Plaintiffs' failure to address the particular circumstances[5] of the Plan's administrative fees means their allegations fall short of the context specific pleading standards and fails to state a claim.

**2. Plaintiffs Also Disregard Intrust's Trustee Fees.**

The SAC also does not address Intrust's trustee fees which were also disclosed on the yearly § 404(a) participant disclosures and the Plan's fee agreements. ECF Nos. 63, p. 3; 28-17 – 28-19. These documents reveal the trustee fees are separate from Intrust's recordkeeping fee, but a part of its total compensation. *Id.* In *Matney* the Tenth Circuit took judicial notice of the operative agreement which contradicted plaintiffs' recordkeeping allegations. 80 F.4th at 1158. The same is true here. The Plan's fee agreements were available to Plaintiffs, reveal Intrust's total compensation includes trustee fees, yet the SAC does not address this fact. As a result, Plaintiffs' allegations lack context and fail to state a claim under ERISA's pleading standards.

**III. Conclusion.**

Simply put, ERISA requires more. Plaintiffs' allegations that the Plan paid excessive recordkeeping fees are premised on single year comparisons to plans with different recordkeeping services and payment structures. Plaintiffs also ignore the Plan's disclosures and fee agreements that contradict their allegations. Under the Tenth Circuit's *Matney* decision each aspect of the SAC's allegations fail as a matter a law. After multiple opportunities to plead a viable recordkeeping claim, Plaintiffs have repeatedly advanced theories rejected by the Tenth Circuit and this Court. Further amendment would be futile. The Court should grant Defendants' Motion to Dismiss.

---

[5] Plaintiffs' failure to account for the impact forfeitures had on participants' fees is particularly egregious in light of the fact that forfeitures were the subject of a previously dismissed claim. *See* ECF No. 58, p. 18-25. In other words, there is no dispute that Plaintiffs were aware of the portion of forfeitures that were allocated towards administrative fees when the SAC was drafted.

Dated: March 31, 2026

Respectfully submitted,

*s/ Stacey C.S. Cerrone*

Stacey C.S. Cerrone, LA Bar No. 25860
(admitted *pro hac vice*)
Howard Shapiro, LA Bar No. 11968
(admitted *pro hac vice*)
Adam R. Carlisle, LA Bar No. 39828
(admitted *pro hac vice*)
JACKSON LEWIS P.C.
601 Poydras Street, Suite 1400
New Orleans, LA 70130
Telephone: (504) 208-1755
Facsimile: (504) 208-1759
Stacey.Cerrone@jacksonlewis.com
Howard.Shapiro@jacksonlewis.com
Adam.Carlisle@jacksonlewis.com

Amelia A. Fogleman, OBA No. 16221
GABLEGOTWALS
1100 ONEOK Plaza, 100 W. 5th Street
Tulsa, OK 74103
Telephone: (918) 595-4800
Fax: (918) 595-4990
Email: afogleman@gablelaw.com
Leasa M. Stewart, OBA No. 18515
GABLEGOTWALS
BOK Park Plaza
499 W. Sheridan Avenue, Suite 2200
Oklahoma City, OK 73102
Telephone: (405) 235-5500
Fax: (405) 235-2875
Email: lstewart@gablelaw.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2026, a true and correct copy of the above and foregoing document was served via CM/ECF to the following counsel of record below:

Mark Gyandoh, markg@capozziadler.com
James Maro, jamesm@capozziadler.com
Mark Donaldson Lyons, lyonscla@swbell.net

*s/ Stacey C.S. Cerrone*
Stacey C.S. Cerrone, LA Bar No. 25860
(admitted *pro hac vice*)