**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JOSEPH BREWER, JOSHUA CHUCK, and JASON MOODY, individually and on behalf of all others similarly situated** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 24-CV-0406-CVE-SH** |
| **ALLIANCE COAL, LLC, THE BOARD OF DIRECTORS OF ALLIANCE RESOURCE MANAGEMENT GP, LLC, and THE ADMINISTRATIVE COMMITTEE OF ALLIANCE RESOURCE MANAGEMENT GP, LLC, and JOHN DOES 1-30,** | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court is a motion to dismiss for failure to state a claim as to plaintiffs' second amended complaint by defendants Alliance Coal, LLC, The Board of Directors of Alliance Resource Management GP, LLC, and The Administrative Committee of Alliance Resource Management GP, LLC (Dkt. # 63). Following this Court's December 9, 2025 opinion and order (Dkt. # 58), plaintiffs Joseph Brewer, Joshua Chuck, and Jason Moody, individually and on behalf of all others similarly situated, filed a second amended complaint. Therein plaintiffs allege that defendants violated provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Plaintiffs' claims derive from their participation in a defined benefits contribution plan that provides participants with retirement benefits offered by their employer, Alliance Coal, LLC ("Alliance"). Plaintiffs allege that defendants, who acted as fiduciaries of the plan, failed to monitor

and control the excessive fees charged by the plan's recordkeeper. Based on these allegations, plaintiffs seek to assert one count for breach of the fiduciary duty of prudence and one count for failure to adequately monitor other fiduciaries in defendants' administration of the plan. Defendants previously moved to dismiss for failure to state a claim upon which relief can be granted (Dkt. # 28) plaintiffs' first amended complaint (FAC), in which plaintiffs asserted four counts against the same defendants. The Court granted defendants' motion and, in its order, granted in part plaintiffs' request for leave to amend their complaint, permitting amendment as to two of the four original counts, which are now at issue here. Dkt. # 58. Plaintiffs filed a second amended complaint (SAC) following the Court's order (Dkt. # 59), and defendants, other than the individual defendants, John Does 1-30, again move for dismissal (Dkt. # 63).[1]

**I.**

Plaintiffs' claims stem from defendants' administration of a defined contribution employee pension benefit plan offered to eligible employees of Alliance.[2] Dkt. # 59, ¶¶ 18-19, 42. The plan is funded by both employee contributions and employer matching and nonmatching contributions. Id. ¶ 46. It is administered by the plan fiduciaries, comprised of the plan sponsors, Alliance and The Board of Directors of Alliance Resource Management GP, LLP ("the Board"), and the plan

---

1 The term "defendants" used herein does not include the individual defendants John Does 1-30. Plaintiffs name as defendants in their SAC John Does 1-30, whom plaintiffs identify as "additional officers, employees, and/or contractors of Alliance who are/were fiduciaries of the [p]lan during the [c]lass [p]eriod." Dkt.# 59, ¶ 28. Plaintiffs identify these defendants as placeholders, "reserv[ing] the right, once their identifiers are ascertained, to seek leave to join [these defendants] in the instant action," and neither count is stated against John Does 1-30.

2 The Court has discussed the factual background of this case in its previous opinion and order (Dkt. # 58, at 2-7) and therefore does not repeat it here.

administrator, The Administrative Committee of Alliance Resource Management GP, LLP ("the Committee"). Id. ¶ 1. It is governed by the plan document, which sets out, among other things, parameters for employee eligibility, contributions and allocations, investment, benefits, and details of plan administration. Id. ¶¶ 19, 43, 46; see also Dkt. # 63-2; Dkt. # 63-3.[3] As is done with most defined contribution benefit plans of this type, the plan fiduciaries engaged a recordkeeper responsible for delivering plan benefits in accordance with the plan document. Dkt. # 59, ¶¶ 1, 52, 56. The plan fiduciaries hired INTRUST Bank, N.A. ("Intrust") to act as a recordkeeper, managing day-to-day plan operations and administrative tasks. Dkt. # 59, ¶¶ 1, 52, 56. Intrust took over the recordkeeping services from its predecessor, NestEgg Consulting, Inc. ("NestEgg") in 2014, following Intrust's acquisition of NestEgg. Dkt. # 58, at 3 n.3; see also Dkt. # 59, ¶¶ 50, 53. At issue in this case are the recordkeeping and administrative ("RKA") fees associated with Intrust's services for the plan. Id. ¶¶ 91-110.

As plaintiff alleges, all national recordkeepers for large plans offer two types of RKA fee bases. Id. ¶¶ 57-58. First, recordkeepers offer their services on a "bundled" or "all you can eat"

---

[3] As the Court noted in its previous order, the plan document is incorporated by reference into plaintiffs' FAC. It is similarly incorporated by reference into plaintiffs' SAC. Although a court deciding a motion to dismiss is generally unable to consider material beyond the four corners of the complaint, Tal v. Hogan, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006), a limited exceptions to this rule exists for "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010) (quoting Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002)). Since no party disputes the authenticity or centrality of the plan documents and defendants attach to their motion to dismiss copies of the plan documents, the Court accepts them as incorporated by reference and considers their contents but does not consider them for their truth. Defendants move for dismissal, inter alia, on the ground that facts contained in the plan documents conflict with plaintiffs' allegations. The Court discusses the implications of judicial notice as to these facts below.

basis, offering recordkeeping, transactional processing, administrative services, participant communication, plan document updates and compliance, consulting and accounting services, and compliance support and testing for a fixed fee. Id. ¶ 57. By contrast, they also offer additional services "à la carte," including loan processing, brokerage services, distribution services, and processing of certain orders for a fee above and beyond the bundled rate. Id. ¶ 58. Plaintiffs allege that bundled RKA fees can be provided at little cost to defined benefit contribution plans with large numbers of participants, and the cost of the bundled RKA services is driven by the number of participants in the plan. Id. ¶¶ 60-61. Essentially, the more participants in a plan, the broader the base of participants among whom the fixed costs of the RKA services is spread. Id. ¶ 61. Plaintiffs allege that this is because the infrastructure required to service a plan with thousands of participants are fixed costs, including creating and maintaining web-based accounting systems or call centers, that are spread among more fee-paying plan participants. Meanwhile, the à la carte fees are profit centers for recordkeepers, above and beyond the bundled fees. Id. ¶ 60. Plaintiffs also assert that, as an industry standard, fiduciaries will usually conduct a request for proposals ("RFP") every three-to-five years as a matter of course to keep bundled fee rates competitive. Id. ¶¶ 77-78.

Plaintiffs allege that the during the purported class period, between 2018 and 2024, the plan's per-participant bundled RKA fees were, on average, $169.87 per year. Id. ¶¶ 93-94. According to plaintiffs, that is more than three times the plan's fees from 2012 and 2013, when NestEgg served

as the plan recordkeeper.[4] Id. ¶ 94. Plaintiffs allege that the number of plan participants remained generally constant (ranging from 3,711 to 4,650 participants) during the period at issue. Id. ¶¶ 96-97, 99. Also during that period, the plan had between $448 million and $638 million in assets under Intrust's management. Id. ¶ 103. Plaintiffs calculated the yearly cost per participant using publicly disclosed Form 5500s, which are the "Annual Return/Report of Employee Benefit Plan" forms, filed with the Department of Labor and Internal Revenue Service on a yearly basis to satisfy ERISA's reporting requirements. Id. ¶¶ 84, 86, 93. To reach the yearly number, plaintiffs started with the total fees reported on the Form 5500s, noting the publicly disclosed categories of services that were provided for the fees associated with RKA codes,[5] which are itemized based on the type of RKA service provided (excluding legal, accounting, and/or consulting fees). Id. ¶ 93, n.16. Plaintiffs then divided the total RKA fees reported that year for the corresponding RKA codes found in the Form 5500s by the total number of participants. Id. ¶ 93. By plaintiffs' calculations, between 2018 and 2024, plaintiffs paid between $98.17 and $220.94 in RKA fees per participant. Id.

---

[4] To support this assertion, plaintiffs allege that NestEgg provided the same services as Intrust, which it states is supported by the Form 5500s, documents plan administrators file with the Department of Labor and Internal Revenue Service in which they disclose the plan's costs and services provided that year, in which the services provided are itemized using a code for each service. Dkt. # 59, ¶ 95. Plaintiffs note that the only difference between the codes for which RKA services were billed is that Intrust charges for services under Code 63, which plaintiffs identify as "Distribution (12b-1) fees," which they state is not as a "service" provided by the recordkeeper, but rather "an 'eligible indirection compensation' from servicing fees charged to a fund." Id.; see also infra (discussing differences between direct and indirect compensation with regard to comparator plans). Based on the virtually identical codes billed for in Intrust and NestEgg's Form 5500s, plaintiffs conclude that "the RKA services provided by NestEgg and I[ntrust] were identical." Id.

[5] Plaintiffs allegations detail the specific codes shown in the Form 5500s, Schedule C, which describe the services provided (e.g., "15 – Recordkeeping and information management (computing, tabulating, data, processing etc.), 37 – Participant loan processing, 50 – Direct payment from the plan, 63 – Distribution (12b-1) fees, 64 – Recordkeeping fees"). Dkt. # 59, ¶ 86.

Plaintiffs further allege that, compared to defined contribution employee pension benefit plans of similar sizes offering similar services during the period 2018 and 2024, Intrust's RKA fees were higher than the peer plans. Id. ¶ 103. Plaintiffs support this allegation by providing the yearly estimates of RKA fees per participant, as calculated by the same method used for plaintiffs allegations as to Intrust's RKA fees derived from the publicly available Form 5500s, for peer plans of between 3,200 and 5,561 participants. Id. Looking at the codes for services provided, the number of participants, and the total assets under management, plaintiffs calculate that the average fee per participant of the selected peer plans was $48.46 per participant, as compared to Alliance's average of $169.87. Id. ¶¶ 93 n.16; 103-04. Based on the size of Alliance's plan, the number of participants, the total assets under management, the services provided, and the overall trends in the marketplace for similar plans, plaintiffs conclude that Alliance could have obtained comparable or superior recordkeeping services at a lower cost to plan participants. Id. ¶ 110. Plaintiffs state that this conclusion is supported by how much lower other peer plans' fees are, defendants' purported failure to conduct regular RFPs to keep the plan's RKA fees competitive with other plans on the market, and Intrust's relative inexperience compared to other recordkeepers in managing plans of this size. Id. ¶¶ 76-82, 69-70. Plaintiffs allege that by failing to control the RKA fees, defendants breached their fiduciary duty of prudence and failed to adequately monitor the other fiduciaries. Id. ¶¶ 111-24.

Plaintiffs first filed their class action complaint in 2024, seeking to allege four claims: one for breach of the fiduciary duty of prudence (against the Committee), one for breach of the fiduciary duty of loyalty (against Alliance, the Committee, and the Board), one for breach of ERISA's anti-inurement provision (against Alliance and the Board), and one for failure to adequately monitor other fiduciaries (against Alliance and the Board). Dkt. # 2, ¶¶ 129-57. Plaintiffs then filed their

FAC to correctly name all defendants. Dkt. # 24, ¶ 6; Dkt. # 27. Defendants moved to dismiss plaintiffs FAC for failure to state a claim upon which relief can be granted. Dkt. # 28. First, defendants argued that plaintiffs had failed to allege sufficient facts to show that defendants had breached their fiduciary duty of prudence based on the alleged fact that RKA fees Intrust charged were higher than comparator plans. Dkt. # 28, at 10-19. Applying the holding from Matney v. Barrick Gold of North America, 80 F.4th 1136 (10th Cir. 2023), defendants argued that plaintiffs' chosen comparator plans were not "apples-to-apples" comparisons, in that plaintiffs had failed to allege that the comparator plans received the same services. Id. at 10-13. Without a meaningful benchmark by which to compare defendants to prudent fiduciaries, defendants argued that the comparator plans could have been receiving dissimilar services for less in fees, negating any claim of imprudence. Id. at 15-16. Because of this, defendants argued that plaintiffs had failed to allege facts to support the conclusion that defendants had breached their duty of prudence under binding Tenth Circuit precedent. Id. at 15-16. Defendants also moved to dismiss plaintiffs' claims derived from defendants' allocation of forfeited funds, specifically employer nonmatching, supplemental, and profit sharing contributions that had not vested prior to an employee's departure from Alliance. Id. at 19-29.[6] Finally, both parties agreed that the failure to monitor claim was derivative of the underlying breaches. Dkt. # 39, at 32; Dkt. # 28, at 29.

---

[6] Plaintiffs alleged that defendants violated the fiduciary duties of prudence and loyalty, as well as ERISA's anti-inurement provision, by using the forfeited funds to offset employer contributions rather than using them exclusively to defray participants' administrative expenses. Dkt. # 27, ¶¶ 9, 46-47, 55, 57. Defendants argued that they had no duty to use forfeited benefits exclusively to defray administrative expenses, nor had they failed to provide benefits guaranteed to employees by the plan documents. Dkt. # 28, at 20-23.

The Court granted defendants' motion to dismiss as to all of plaintiffs' claims. Dkt. # 58, at 27. With respect to the RKA fees, the Court found that plaintiffs had properly alleged that five plan comparators had similar assets and participants to Intrust's plan and that Intrusts's RKA fees were higher than those other plans, but it found that plaintiffs had failed to allege facts to support the conclusion that the comparator plans were meaningful benchmarks against which to measure the RKA fees charged. Id. at 11. Although plaintiff asserted that the comparator plans could provide the same services as Intrust, they failed to allege that comparator plans actually did provide the same services. Id. at 12. The Court was therefore unable to find that plaintiff had pled sufficient facts, that if accepted as true would allow plaintiff to state a claim that defendants had breached their fiduciary duty of prudence. Id. at 18. The Court also held that plaintiffs failed to state a claim based on defendants' allocation of plan forfeitures. Id. at 20.[7] Finally, the Court dismissed plaintiffs' failure to monitor claim, given that all other claims were subject to dismissal and this claim was derivative. Id. at 25-26. The Court did grant plaintiffs leave to amend with respect to the claims based on the RKA fees charged. Id. at 26-27. The Court held that "if they were to sufficiently allege that Intrust, in fact, provided the same RKA services as those provided by the comparator plans," then "plaintiffs might be able to plausibly allege" their claim. Id.

---

[7] The Court noted that a considerable body of law—including a growing number of district courts across the country that had considered but rejected plaintiffs' theory, binding Supreme Court precedent, and decades of policy—weighed in favor of dismissal as to plaintiffs' claims related to defendants' allocation of forfeited benefits to defray employer contributions. Id. at 20-23. The Court also found that plaintiffs had failed to allege sufficient facts to support the conclusion that defendants placed their interests above those of the plan and participant and that the plan incurred expenses it would otherwise not have as a result. Id. at 23. The Court held that plaintiffs did not plead facts to support a finding that defendants violated ERISA's anti-inurement provision in that plaintiffs failed to allege that any forfeited fees left the plan, a threshold requirement for such a claim. Id. at 25.

Plaintiffs filed their SAC following the Court's order, alleging two counts, one for a breach of the fiduciary duty of prudence (against the Committee) and one for a failure to monitor other fiduciaries (against Alliance and the Board). Dkt. # 59. Plaintiffs also alleged additional facts, including, inter alia, allegations related to the services provided by NestEgg prior to Intrust's assumption of the role of recordkeeper. Dkt. # 65-1, ¶¶ 94-98. Plaintiffs also included more detailed information about new comparator plans, specifically delineating the service codes for the services provided. Dkt. # 59, ¶ 103. Defendants again moved to dismiss for failure to state a claim on substantially similar grounds as those previously argued. Dkt. # 63.

**II.**

In considering a dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief can be granted. A motion to dismiss is properly granted when a complaint provides "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Tenth Circuit has interpreted the plausibility requirement to mean that if the allegations contained in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Robbins v. Okla. ex. rel. Dep't of Hum. Servs., 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Twombly, 550 U.S. at 570). The allegations must also "be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim to relief." Id. (footnote omitted). Put differently, for a claim to survive a Rule 12(b)(6) motion, there must be "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a

plaintiff must offer specific factual allegations to support each claim." Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting Twombly, 550 U.S. at 555); see also Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976) ("A motion to dismiss under Fed. Rules Civ. Proc., rule 12(b) admits all well-pleaded facts in the complaint as distinguished from conclusory allegations.").

When examining a motion to dismiss for failure to state a claim on which relief can be granted, a court must accept as true all well-pleaded allegations in the complaint and construe the allegations in the light most favorable to the claimant. Iqbal, 556 U.S. at 678-79. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Tal v. Hogan, 453 F.3d 1244, 1252 (10th Cir. 2006) (quoting Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999)). Rather, a court must determine whether facts alleged are "be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citation omitted) (citing 5 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1216 (3d ed. 2004)).

**III.**

Defendants move to dismiss plaintiffs complaint on the basis that plaintiffs have failed to cure the deficiencies the Court identified in its previous opinion and order. Dkt. # 63, at 5 (citing Dkt. # 58). Defendants make two main arguments as to why dismissal is merited here. First, defendants argue that plaintiffs' allegations about comparator plans, which is the basis for both of their claims, are insufficient to meet the "meaningful benchmark standard" established by the Tenth

Circuit in Matney. Id. at 11-12 (citing Matney, 80 F.4th at 1157-58), 16-18. Defendants reiterate that plaintiffs allegations as to the comparator plans' services and RKA fees are conclusory and unsupported by factual allegations. Id. at 11. Defendants argue that plaintiffs fail to cure a dispositive flaw from their FAC, in which they stated that the comparator plans' recordkeepers were capable of providing the same services as those provided by Intrust, not that they actually did provide such services. Id. at 23. Defendants also point to disparities in the services provided by the plans based on the codes that appear on the Form 5500s, arguing that none of the plaintiffs' comparators provided the same services as Alliance's plan and therefore using the RKA fees Intrust charged as a basis for comparison would run contrary to settled law and this Court's previous opinion and order. Id. at 16-17. Defendants argue that plaintiffs' attempt at using NestEgg's fees from before 2014 as comparators is also improper both because plaintiffs miscalculate the RKA fees charged and because the service codes and services provided differ. Id. at 20-21. Defendants also argue that the comparator fees alleged are implausible because the comparator plan recordkeepers were paid through direct and indirect compensation, whereas Alliance paid Intrust exclusively through direct compensation. Id. at 18-20. Finally defendants argue that there is no meaningful benchmark across comparator plans given that plaintiffs rely on different comparators for every year of the class period, which defendants characterize as "cherry picking" data. Id. at 21-22.

Second, defendants argue that the fees plaintiffs allege Intrust charged for RKA services are implausible and therefore cannot serve as the basis for plaintiffs' claims. Defendants point to the fee agreements, of which defendants ask the Court to take judicial notice, to demonstrate that Intrust actually charged participants between $20 and $30 in RKA fees, rather than, as plaintiff alleges,

between $98.17 and $220.94, based on the Form 5500s. Dkt. # 63.[8] Compare Dkt. # 63, at 13 (citing Dkt. ## 63-7, 63-8, 63-9. 63-10, 63-11), with Dkt. # 59, ¶ 93. Defendants argue that plaintiffs improperly calculate the RKA fees using the Form 5500s because the Form 5500s reflect charges for both trustee and RKA fees and are therefore overinclusive. Dkt. # 63, at 14. Defendants also argue that the Form 5500s are overestimations of the RKA fees paid because plan forfeitures were used to offset RKA fees and were therefore not charged to participants but were reported on the Form 5500s. Id. at 15. On both of these grounds, defendants ask the Court to find that plaintiffs fail to state viable claims, even accepting as true all well-pled allegations.

**A. Meaningful Benchmark for Comparator Plans**

Plaintiffs' claims stem from the assertion that the Committee has breached its fiduciary[9] duty of prudence by failing to control the cost of the plan's RKA fees. Dkt. # 59, ¶ 114. In support of this conclusion, plaintiffs allege that similar defined benefit plans engaged recordkeepers whose RKA fees were significantly lower than the RKA fees paid to Intrust. Id. ¶¶ 103-06. The Tenth Circuit has established that in order for a plaintiff to "raise an inference of imprudence through price disparity" between the RKA fees paid and alternative plans in the marketplace, as plaintiff attempts to do here, "a plaintiff has the burden to allege a 'meaningful benchmark.'" Matney, 80 F.4th at 1148 (quoting Meiners v. Wells Fargo & Co., 898 F.3d 820, 822 (8th Cir. 2018)) (adopting the Eight

---

8 Defendants also note that plaintiffs' allegations end in 2024 because Alliance has assumed payment of plaintiffs' RKA fees. Dkt. # 63, at 15.

9 Neither party disputes that defendants were acting as fiduciaries by managing the RKA fees associated with the defined benefits plan. The Court addressed this point in its last opinion and order, in which it analyzed substantially similar language in plaintiffs' FAC. See Dkt. # 59, at 9-10 (establishing that plaintiffs adequately alleged that defendants acted as fiduciaries as a threshold matter).

Circuit's standard for claims of breaches of the fiduciary duty of prudence, in which administrators of defined benefits plans are alleged to have acted imprudently based on broad disparities in RKA fees). What makes a cost comparison "meaningful" is, however, inherently "context specific because 'the content of the duty of prudence' is necessarily 'context specific.'" Id. (quoting Hughes v. Northwestern Univ., 595 U.S. 170, 177 (2022)). The Tenth Circuit illustrated that for recordkeeping fees, "a comparison will be meaningful if the complaint alleges that the recordkeeping services rendered by the chosen comparators are similar to the services offered by the plaintiff's plan." Id. (citing Smith v. CommonSpirit Health, 37 F.4th 1160, 1167 (6th Cir. 2022); Matousek v. MidAm. Energy Co., 51 F.4th 274, 279 (8th Cir. 2022)). The Tenth Circuit has made plain that an alleged disparity in RKA fees charged without more is insufficient to support an inference of imprudence. Id. "[T]he complaint must state facts to show the funds or services being compared to are, indeed, comparable." Id. At issue, therefore, is whether plaintiff has alleged sufficient facts to show that the chosen comparators offered similar services to those offered by Intrust and therefore the comparisons are "apples-to-apples." Id.

Plaintiffs assert that in light of the available defined benefit plans "in the marketplace as a whole, the [Alliance] [p]lan could have obtained recordkeeping services that were comparable to or superior to the typical services provided by [Intrust] at a lower cost." Dkt. # 59, ¶ 110. In support of this assertion, plaintiffs allege that during the purported class period, between 2018 and 2024, recordkeeping costs for plans of similar size were significantly lower than the plan's costs. Id. ¶ 103. Plaintiffs then list the cost per participant for thirty-two plans (five per year with two plans repeating across multiple years), which it alleges are comparable "peers" to the plan at issue here. Id. Plaintiffs list the assets under management, which range from between $135 million to $1 billion,

as well as the number of participants, which range from between 3,043 and 5,561 participants. Id. Critically, plaintiffs also list the Form 5500 Schedule C codes, indicating the types of services performed by the recordkeeper for which they charged RKA fees that year. Id. ¶¶ 103, 86. It is based on these three factors—plan assets, number of participants, and services provided—that plaintiffs support the conclusion that these plans are comparable. Id. ¶ 104.

**1. Services Provided**

Defendants argue that the third aspect of this comparison, the services provided, are not actually comparable, contrary to plaintiffs' assertions. Defendants recapitulate that although plaintiffs allege that the comparator plans could provide the same services, plaintiffs "fail[] to allege that the comparator plans actually did provide the same quality or even the same type of service as Intrust." Dkt. # 63, at 17 (quoting Dkt. # 58, at 12). What defendants' argument misconstrues is that plaintiffs allege that the same types of services were provided, in that the SAC newly includes the Form 5500 Schedule C codes for each comparator plan, which, according to plaintiffs' allegations, indicate the type of service that was actually performed by the recordkeeper that year, reported by the plan administrators to the Department of Labor and Department of Treasury, pursuant to ERISA's reporting requirements. Dkt. # 59, ¶ 86; ¶ 4 n.5. Defendants are correct that plaintiffs do not state this fact as plainly as "the comparator plans did provide the same types of services as Intrust," opting instead to demonstrate this fact through RKA Schedule C codes. But defendants ask the Court to hold plaintiffs to standard beyond what Rule 12(b)(6) requires.

Defendants also seek dismissal on the ground that plaintiffs allege that the comparator plans billed for different service codes and therefore provided different services than Intrust did. Dkt. # 63, at 9 (citing Dkt. # 59, ¶ 103). Plaintiffs respond that Intrust provided services billed using five codes

in three categories: recordkeeping services (15 and 64), loan processing (37), and recordkeeping fees (50 and 63). Dkt. # 65, at 11 (citing to Dkt. # 59, ¶ 55). Whereas Intrust consistently charged fees for services that correspond to five codes, the comparator plans charged fees and delivered services for between three and fourteen codes. Dkt. # 59, ¶ 103. Yet, all comparator plans billed for some combination of recordkeeping (15 or 64) and loan processing (37), the two services (as contrasted with fees) at issue here. Id. On this point, plaintiffs argue that the comparator plans provide identical services to those at issue here (corresponding to billing for codes 37 and either 15 or 64). Dkt. # 65, at 19. Any additional codes, beyond those basic services Intrust is purported to have provided, would amount to additional services provided for, by plaintiffs' allegations, at lower costs to participants. Id. As plaintiffs point out, courts have accepted this assessment of billing codes as sufficient to demonstrate overlap in the services provided by comparator plans. In Mator v. Wesco Distribution, Inc., 102 F.4th 172 (3rd Cir. 2024), the Third Circuit held that, despite differences among comparator codes and the plan at issue, "[a]ll of the plans list either 'Recordkeeping fees,' 'Recordkeeping and information management (computing, tabulating, data processing),' or both," allowing the court to conclude that there was sufficient overlap in the codes to permit a comparator plan to have billed for only one of the two codes. Id. at 186; see also Coyer v. Univar Sols USA Inc., No. 22-CV-0362, 2022 WL 4534791, at *5 (N.D. Ill. Sept. 28, 2022) (holding that comparator plans of a similar size that are alleged to have provided "at least the same services for less" provided a meaningful benchmark for comparison); Schuster v. Swinerton Inc., No. 24-CV-4970, 2025 WL 1069887, at *4 (N.D. Cal. April 5, 2025) (finding that although comparator plans used different service codes, the differences did "not undermine [p]laintiffs' comparisons because they apparently overlap[ped]"). Defendants counter that "these codes must be identical for any fee comparisons to

satisfy the meaningful benchmark standard," citing to this Court's previous opinion and order as well as Matney and authority from the Second, Sixth, and Eighth Circuits. Dkt. # 68, at 4. However, none of the authorities cited supports defendants' proposition. Rather, they all support the claim that the services rendered by the comparator plans' recordkeepers must be identical, not that every code must be. The discrepancy in service codes are not fatal to plaintiffs' claims. Rather, plaintiffs well-pled allegations regarding the codes billed for and services provided support plaintiffs' conclusion that the services provided were equivalent to or greater than those provided by Intrust.

In a similar vein, plaintiffs newly allege facts about Intrust's predecessor as plan recordkeeper, NestEgg, including new allegations as to the commensurate services provided and the lower fees charged. See Dkt. # 59, ¶¶ 50-55. Plaintiffs allege that in 2012 and 2013, the RKA fees per participant averaged to $49.75, whereas in 2014, Intrust's RKA fees jumped to $134.90. Id. ¶¶ 50, 54. Likewise, plaintiffs alleged that the fee codes billed for by NestEgg were the same as those billed for by Intrust, meaning they provided substantially the same services. Id. ¶¶ 51-55. Defendants argue that because Intrust provided services under the billing code 63, which NestEgg did not, the recordkeepers provided the plan with different services. Dkt. # 63, at 21. Yet, as discussed above, recordkeeping services billed through the codes 50 and 63 overlap. Just as with the other comparator plans, plaintiffs allegations as to Intrust's predecessor do not fail simply because of a discrepancy in the billing codes. Rather, plaintiff has alleged that the codes billed for and therefore the services provided are substantially the same.

**2. Direct and Indirect Compensation**

Next, defendants argue that plaintiffs' comparator plans do not serve as meaningful benchmarks because the comparator plans paid their recordkeepers through indirect compensation,

which defendants state does not appear in Form 5500s by which plaintiffs calculated the price per participant. Dkt. # 63, at 18-20. Plaintiffs concede that they included in their comparator table defined benefit plans with Form 5500s in which the plan administrators had checked the box indicating that they had paid their recordkeepers indirect fees. Dkt. # 65, at 27. Plaintiffs argue, however, that they have cured any possible overestimation of RKA fees through the inclusion of indirect fees by verifying that on the same Form 5500s, the amount of indirect fees actually paid was reported as "0." Id. Defendants counter that the Form 5500s may not be accurate as to the amount of indirect fees included in their total RKA costs because the forms do not require sponsors to disclose eligible indirect compensation for which the plan received required disclosures. Dkt. # 68, at 6 (quoting the language of the Form 5500s). Defendants argue that other courts have found that comparator plans whose RKA fees include only direct compensation cannot provide a meaningful benchmark against which to measure RKA fees that include both direct and indirect compensation. See, e.g., Singh v. Deloitte LLP, 123 F.4th 88, 95 (2d Cir. 2024); Mateya v. Cook Grp., No. 22-CV-1271, 2023 WL 4608536, at *8 (S.D. Ind. June 16, 2023). Here, however, plaintiffs have plausibly alleged and sufficiently argued that the RKA fees alleged to have been paid by comparator plans comprise just direct recordkeeping fees, given that indirect fees paid were reported as $0 on those plans that indicated they included indirect fees. Defendants raise an issue of fact (i.e., whether the Form 5500s accurately indicate services each comparator plan billed for based on industry standards), but plaintiffs have pled sufficient facts to allow the court to draw the reasonable inference in favor of plaintiffs, that the costs alleged were comprised of only direct costs based on the comparator plan administrators' responses to the Form 5500s. Whether the comparator plans incorrectly reported the total paid indirect fees based on reporting requirements is an issue for discovery.

**3. New Comparators Each Year**

Lastly, on this issue, defendants argue that the comparator plans cannot provide a meaningful benchmark against which to measure the RKA fees charged by Intrust because plaintiffs' chart of comparators does not consistently use the same plans as comparators during the entire class period. Dkt. # 63, at 21-22. Defendants accuse plaintiffs of cherry-picking data by using yearly snapshots of thirty-two different plans, with two repeating over multiple years. Dkt. # 63, at 22. Defendants support this claim by citing to three cases in which courts have dismissed claims on the basis that plaintiffs cherry-picked comparator data. Id. In each case cited, however, each court held that the fees charged by comparators in a single year could not serve as a meaningful benchmark against the defendant plan's fees across multiple years. See, e.g., Singh, 123 F.4th at 95, Dkt. # 1, ¶ 66 (comparing costs for seven plans in just 2019 to defendants' plan between 2015 and 2021); Mateya, 2023 WL 4608536, Dkt. # 1, ¶ 229 (comparing costs for four plans in only 2021 to defendants' plan between 2018 and 2022); Miller v. Pfizer, Inc., No. 23-CV- 2024 WL 6968817, at *2, 3 (W.D. Mich. Oct. 17, 2024) (comparing one year of comparator plans' fees to an average of defendants' plan taken between 2017 and 2021). By contrast, plaintiffs compare like-to-like: plaintiffs compare five other plans' fees to this plan's fees during the same year for each year of the purported class period. Although plaintiffs do not use the same comparator plans across all seven years, the Court has no basis on which to conclude that this is an inherently flawed or problematic methodology by which the comparison is no longer a meaningful benchmark. Defendants might have preferred plaintiffs to have alleged a consistent comparator across all years of the period at issue, but that is not the standard against which the Court determines whether dismissal is warranted. The Court cannot conclude that because plaintiffs use different comparator plans across each year the comparator plans are no longer a meaningful benchmark.

**B. Calculation of RKA Fees**

Defendants also argue that the facts plaintiffs allege to have used to calculated the RKA fees at issue are implausible and therefore cannot support a claim for a breach of the duty of prudence and a failure to monitor. Dkt. # 63, at 13-16. On this point, defendants first argue that the fee agreements between Intrust and the plan fiduciaries, and not the Form 5500s, correctly reflect the actual fees charged per participant. Id. Defendants ask the Court to take judicial notice of the fees agreed to by the parties as reflected in their fee agreements, which defendants attach to their motion. Id. at 7 n.4. Defendants' request is premised on the fact that the fee agreements were "available to plaintiffs when drafting the SAC and are central to their allegations." Id. Even if these documents are central to plaintiffs' claims and the Court were to take judicial notice of the fee agreements, it is well-established that a court may not use judicially noticeable material to show the truth of its contents. Tal, 453 F.3d 1244, 1264-65, n.24 (10th Cir. 2006) ("[T]he documents [of which a court takes judicial notice] may only be considered to show their contents, not to prove the truth of matters asserted therein." (quoting Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002))). When a court relies on the truth of the external evidence before it, it runs afoul of the general bar on determining the sufficiency of a complaint by its contents alone. Gee, 627 F.3d 1178, 1186 (10th Cir. 2010). A court's reliance on evidence extrinsic to the complaint in making a determination on a motion to dismiss amounts to reversible error, cured by converting the Rule 12(b)(6) motion into a motion for summary judgment. Id.; Foremaster v. City of St. George, 882 F.2d 1485, 1491 (10th Cir. 1989); Torres v. First State Bank of Sierry Cnty., 550 F.2d 1255, 1257 (10th Cir. 1977). At this stage, the Court denies defendants' request to consider the facts contained in the fee agreements for their truth, and therefore it cannot conclude that Intrust charged plan

participants between $20 and $30 per participant during the class period, as contrasted with the between $98.17 and $220.94 plaintiffs alleged Intrust charged per participant. Dkt. # 63, at 13; Dkt. # 59, ¶ 103.

Defendants next argue that plaintiffs' fees are implausibly alleged because plaintiffs improperly calculate the RKA fees that appear on the Form 5500s, including both trustee and RKA fees rather than just RKA fees charged. Dkt.# 63, at 14. Plaintiffs dispute this, arguing that the Form 5500s contain a separate trustee and custodial fee section that is not included in the RKA fees reported, and that plaintiffs did not use the trustee or custodial fees in calculating the fees they allege plaintiffs to have paid during the purported class period. Dkt. # 65, at 15. Here, the Court is faced with a fundamentally factual dispute as to whether plaintiffs included or excluded the trustee and custodial fees in reaching their fee per participant number. The Court limits its examination, as it must, to determining the factual sufficiency of the complaint, accepting the well-pled allegations as true and construing them in the light most favorable to plaintiffs. Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 (10th Cir. 2007). Plaintiffs allege that the "[p]lan's per participant RKA fees" were between $98.17 and $220.94, and that they reached that number using Schedule C of the plan's Form 5500s during the period at issue. Dkt. # 59, ¶¶ 92-94, 93 n.16. Plaintiffs specifically note that "excluded from these amounts are any amounts reported as, including but not limited to, legal, accounting and/or consulting fees." Id. ¶ 93, n.16. Plaintiffs' burden here is not to enumerate every type of fee excluded from its calculations but rather to demonstrate that the fees Intrust is alleged to have charge plan participants are accurate and can serve as a meaningful benchmark against which peer plans can be compared. See Matney, 80 F.4th at 1157-58. The Court is satisfied that plaintiffs allegations as to the use of the fees listed in the Form 5500s sufficiently "nudge[] [its claims] across

the line from conceivable to plausible," and defendants ask the Court to hold plaintiffs to a standard higher than what is required by Rule 12. Whether the Form 5500s properly exclude trustee and custodial fees from the RKA fee reporting section is an issue of fact for discovery.

Finally, defendants argue that plaintiffs' alleged RKA fees are implausible because plaintiffs fail to include in their calculations that plan forfeitures were used to pay "a substantial portion" of the RKA fees such that the RKA fees alleged were never actually charged to plan participants. Dkt. # 63, at 15. Defendants point to plaintiffs' FAC and the Court's order dismissing that complaint, in which the parties agreed that a portion of forfeitures was used to defray administrative fees. Id. (citing Dkt. # 58, at 6, n.6); see also Dkt. # 59 ¶ 122(a) (alleging in plaintiffs' SAC that the company "use[d] forfeited funds to pay for [p]lan RKA services"). Plaintiffs respond that the plan's use of forfeitures to offset participants' RKA fees were inconsequential, as even slight deductions would still result in unreasonably high RKA fees (i.e., more than double comparator plans). Dkt. # 65, at 16. Plaintiffs argue that any issue regarding the use of forfeitures to offset the fees goes to the scope of damages not the plausibility of their claims. Id. at 17. Like the issue of including trustee and custodial fees in plaintiffs' alleged RKA fees, whether the plan's use of forfeitures might have impacted plaintiffs' allegations of the plan's RKA fees is an issue of fact, unsuitable for resolution by the Court at this stage of litigation. Plaintiffs allege sufficient facts to allow the Court to conclude that the plan's alleged RKA fees were calculated on a sound factual basis using the number of participants and reported fees, as derived from the Form 5500s for specific services provided. See Dkt. # 59, ¶¶ 93 n.16, 103. For the Court to conclude that the plan's use of forfeitures to offset the fees charged to participants makes plaintiffs' claimed fees implausible, it would be required to drawing an inference (that the forfeitures meaningfully impacted the total RKA fees alleged) in

defendants' favor. The Court is expressly disallowed from doing so at the motion to dismiss stage. Iqbal, 556 U.S. at 687. Plaintiffs have sufficiently and plausibly alleged the RKA fees plaintiffs paid Intrust during the purported class period using an allegedly sound factual bases.

When plaintiffs assert a breach of the duty of prudence claim under ERISA, in which they allege that the duty was breached through use of a cost comparison with peer plans, they bear a burden to prove that the peer plans to which their plan is compared is a meaningful benchmark, that it is an "apples to apples" comparison. Matney, 80 F.4th at 1157-58; Singh, 2023 WL 4350650. The issues defendants raise regarding plaintiffs' calculations of the plan's RKA fees amount to arguments that plaintiff is comparing apples to bruised apples, not that plaintiff is comparing apples to oranges. Plaintiffs have alleged sufficient facts to show how they arrived at the fees paid per participant using a sound methodology that has been accepted by other courts as sufficient to survive a motion to dismiss.

**IV.**

The Court finds that plaintiffs have pled sufficient facts to show that the comparator plans serve as a meaningful benchmark on which its claims for breaches of the duty of prudence and failure to adequately monitor other fiduciaries rest. Plaintiffs properly allege that the services provided by the comparator plans were the same as those Intrust provided, as reflected in the Schedule C service codes for which fees were charged per the Form 5500s. Plaintiffs' allegations also overcome defendants' argument that apparent discrepancies in service codes reflect distinct services provided, as the service codes at issue overlap. Likewise, plaintiffs have shown that the comparator plans reflect like compensation to Intrust's, in that all plans that include indirect compensation state that there was 0 indirect compensation paid. Finally, although plaintiffs do not

consistently use the same set of plans across the seven year period of comparison, they do not "cherry pick" data, as defendants assert, by comparing five plans to Alliance's plan for each year of the period.

As for the method of calculating the RKA fees that plaintiffs allege Intrust charged, plaintiffs were not required to derive their alleged fees from the fee agreements rather than the Form 5500s. Moreover, any discrepancy between the fees agreed to and the Form 5500s are issues of fact for discovery. Similarly, defendants' arguments that the Form 5500s are overinclusive, in that they include both trustee and RKA fees and they do not include forfeitures that Alliance used to offset participant fees, are issues of fact inappropriate for resolution at the motion to dismiss stage. Plaintiffs have stated a claim on which relief can be granted as to the breach of the fiduciary duty of prudence and have stated a claim as to failure to monitor other fiduciaries that is derived therefrom.

**IT IS THEREFORE ORDERED** that defendants' motion to dismiss (Dkt. # 63) is **denied**.

**IT IS FURTHER ORDERED** that defendants shall answer plaintiffs' second amended complaint (Dkt. # 59) no later than **September 10, 2026**.

**DATED** this 20th day of August 2026.

Claire V. Eagan

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE